JAYVEE BRAND, INC., et al., Appellants,

v.

UNITED STATES of America, et al.

No. 82–1167.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1982.

Decided Nov. 15, 1983.

C. Michael Deese, Washington, D.C., with whom Arthur L. Herold and Steven D. Simpson, Washington, D.C., were on brief, for appellants.

Katherine S. Gruenheck, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Anthony J. Steinmeyer, Atty., Dept. of Justice, and Mana Jennings, Atty., Consumer Product Safety Commission, Washington, D.C., were on the brief, for appellees. R. Joseph Sher, Atty., Dept. of Justice, Washington, D.C., also entered· an appearance for appellees.

Before EDWARDS and BORK, Circuit Judges, and LUMBARD,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Circuit Judge BORK.

Concurring opinion filed by Circuit Judge HARRY T. EDWARDS.

Concurring opinion filed by Senior Circuit Judge LUMBARD.

BORK, Circuit Judge:

This is a suit for damages brought by manufacturers of children's sleepwear against the United States, the Consumer Product Safety Commission and five individuals formerly members of that Commission. Appellants seek monetary damages for losses they say were caused by Commission regulatory action. We find that the Federal Tort Claims Act does not grant the district court jurisdiction over this suit against the United States and that the individuals are entitled to absolute immunity from the tort claims brought against them under the due process clause of the fifth amendment. We therefore affirm the order of the district court dismissing appellants' complaint.

## I.

Appellants are manufacturers of children's sleepwear; they purchase fabric, cut and sew it into garments, and sell the product to wholesalers. In 1971 the Secretary of Commerce issued an apparel flammability standard applicable to appellants' products. 16 C.F.R. Part 1615 (1983). This was followed in 1974 by further standards issued by the Consumer Product Safety Commission ("CPSC" or "Commission"). 16 C.F.R. Part 1616 (1983). In order to comply with these regulations, appellants began purchasing fabric treated with the flame-retardant compound tris (2,3-dibromopropyl) phosphate ("Tris").

In March, 1976, and again in February, 1977, the CPSC received petitions alleging that Tris was a carcinogen and urging safety measures. Responding to these petitions, the Commission obtained data on Tris' carcinogenic effects. On April 8, 1977, the CPSC issued an amendment to 16 C.F.R. § 1500.18(d) (1976), declaring Tris a "hazardous" and "toxic" substance within the meaning of the Federal Hazardous Substances Act, 15 U.S.C. § 1261(f)(1)(A), (g) (1976). 42 Fed.Reg. 18,850–53 (1977). As a result of this finding, the Commission decided that unwashed, Tris-treated garments and fabric intended for sale in children's apparel were "banned hazardous substances" under 15 U.S.C. § 1261(q)(1)(A) (1976). 42 Fed.Reg. 18,853 (1977). Appellant manufacturers were required to repurchase Tris-treated clothing from retailers.

Appellants base their tort claim on procedural infirmities in the Tris ban. Specifically, they claim that the Commission failed to follow the procedures set forth in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 371(e) (1976). The Commission did not provide notice of the proposed ban in the Federal Register, and did not receive the views of affected parties prior to the ban. In *Springs Mills, Inc. v. CPSC,* 434 F.Supp. 416 (D.S.C.1977), the district court found the Tris ban void because of these irregularities. *Id.* at 435. According to appellants, the Commission's failure to follow statutorily prescribed procedures damaged them in the amount of approximately $30 million.

On December 30, 1982 (subsequent to oral argument in this case) the President signed into law Pub.L. No. 97–395, 96 Stat. 2001 (the "Tris Act"). Under the Tris Act the Claims Court has jurisdiction over

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

any claim for losses sustained by any producer, manufacturer, distributor, or retailer of children's sleepwear, or by any producer, converter, manufacturer, distributor, or retailer of fabric, yarn, or fiber contained in or intended for use in children's sleepwear, (1) if those losses resulted from the actions taken by the Federal Government under the Federal Hazardous Substances Act of April 8, 1977, and thereafter relating to apparel, fabric, yarn, or fiber containing Tris (2,3-dibromopropyl) phosphate, and (2) if such children's sleepwear or such fabric, yarn, or fiber, as the case may be, at the time of its manufacture was subject to the requirements of or was subject to use in compliance with the mandatory Federal flammability standard FF3–71 or FF5–74.

The Tris Act goes on to prescribe the factors that the Claims Court is to consider in adjudging liability, the method of measuring losses and certain procedural rules for Tris claims.

This suit was brought in the District Court for the District of Columbia against the United States, the CPSC and the individual members of the Commission at the time of the ban. Relief was sought against the United States and the Commission under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* (1976), and 15 U.S.C. § 2053(h) (1976). Appellants claimed that the ban constituted negligence per se under local law as applicable pursuant to the FTCA (Counts I, II and III), that it constituted a taking of property without just compensation in violation of the fifth amendment (Count IV), and that the individual Commissioners' conduct was an actionable denial of the due process of law guaranteed by the fifth amendment (Count V), *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

In the district court, appellees urged dismissal on various grounds: lack of subject matter jurisdiction, failure to state a claim upon which relief could be granted, and lack of personal jurisdiction over the individual defendants. The district court granted the motion, ruling that (1) sovereign immunity bars the tort claims against the United States; (2) the CPSC is not a proper defendant under the FTCA; (3) there is no subject matter jurisdiction over the taking claim;[1] (4) "special factors" counsel against imposing *Bivens*-type liability on the individual Commissioners; and (5) the Commissioners are immune from individual liability of this type. Appellants are before this court on appeal of that order of dismissal.

## II.

■ Courts may not entertain suits against the United States without consent of the United States in the form of an express waiver of sovereign immunity. The Federal Tort Claims Act is a limited waiver. Speaking generally, the FTCA waives immunity, allowing the government to be liable in tort for negligent or wrongful acts committed by a government employee acting within the scope of his employment when a private person would be liable for those acts under applicable law. The Act also contains specific exceptions to the general waiver. We are convinced, for reasons developed below, that the FTCA confers no jurisdiction over appellants' claim. The language of the statute, though helpful, does not compel a decision either way. Our conclusion rests primarily upon the apparent intention of Congress as that may be gleaned from various materials and considerations of policy. The statutory category through which that decision may be expressed is either the discretionary function exception or the requirement that the government be liable only if a private person would be liable for the same conduct. Though either category would suffice for

---

1. In this appeal, appellants do not challenge the dismissals of the CPSC as a defendant and of their taking claim. Brief for Appellants at 18 n.

1. Accordingly, we deal with neither the CPSC nor Count IV of appellants' complaint.

our purposes, we think that both are applicable.

### A.

The FTCA excepts the discretionary functions of government employees from creating tort liability. The Act creates this "discretionary function" exception in 28 U.S.C. § 2680(a):

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Appellants concede, as they must, that the substantive decision whether to ban Tris was discretionary and hence within the exemption provided by the second clause of section 2680(a). But, they contend, the CPSC had no discretion to refuse to follow the procedures specified by 21 U.S.C. § 371(e). This is, of course, correct. The procedural mandates of 21 U.S.C. § 371(e) apply in every case. *Pactra Industries, Inc. v. CPSC,* 555 F.2d 677, 683 (9th Cir.1977) ("Congress fully intended that the rigid statutory requirement of a formal hearing should continue in every case where a proposed regulation was controversial and opposed by persons who were adversely affected by the agency's action.") (footnote omitted). Appellants argue, with considerable ingenuity, that the government is liable because its failure here to follow mandatory procedures defeats the discretionary function exception.

It is clear that the exception does not apply when a government employee fails to follow obligatory procedures in applying a rule that itself is an exercise of discretion. *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956);

*Beins v. United States,* 695 F.2d 591, 600–01 (D.C.Cir.1982); *Birnbaum v. United States,* 588 F.2d 319, 329, 332 (2d Cir.1978); *Griffin v. United States,* 500 F.2d 1059, 1068–69 (3d Cir.1974); *Blessing v. United States,* 447 F.Supp. 1160, 1177–78 (E.D.Pa.1978). This entails liability for improper executive action occurring after and in the implementation of a rule previously adopted. It is equally clear, on the other hand, that if appellants challenged the substance of an agency-formulated ban on Tris-treated garments, the discretionary function exception would shield the United States from liability. *Dalehite v. United States,* 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953) ("Where there is room for policy judgment and decision there is discretion."); *Beins v. United States,* 695 F.2d at 600. *See Blessing v. United States,* 447 F.Supp. at 1171–82 nn. 27–29, and cases cited therein.

We are here presented, however, with a third case: an attack, not on the rule or its execution, but on the procedures by which the Tris ban was formulated and adopted. It would be possible, perhaps, to focus exclusively upon the procedures employed by the CPSC or, alternatively, to view those procedures as integral to the decision to adopt the substantive regulation. The different perspectives give different outcomes. The former involves a non-discretionary dereliction. The latter may be characterized as an abuse in the exercise of policy making, and hence an abuse of discretion shielded from liability by section 2680(a). We tend to think the latter is the better view. Procedure and substance are intertwined and CPSC abused its undoubted discretion by arriving at its decision in the wrong way. We do not rest primarily upon this reasoning, however. Nor do we deny that, as we have described the alternative perspectives, and if no other factors are taken into account, one might plausibly contend that there is in the nature of things no reason to prefer one formulation to the other: that their difference is purely semantic, if not metaphysical. Our choice, therefore, must turn on other factors and,

on the basis of those factors, discussed below, we conclude that making a discretionary decision without following mandated procedures should be characterized, for the purposes of the FTCA, as an abuse of discretion. It follows that the discretionary function exception applies and the district court was without jurisdiction to entertain this suit.

### B.

█ We think jurisdiction is lacking in this case for an additional reason: because the last condition of 28 U.S.C. § 1346(b) (1976) is not met. Section 1346(b) confers jurisdiction on the federal courts to hear

> civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The Commission's alleged failure to file the proper procedures was plainly a "wrongful act." Similarly, the act or omission was by an "employee of the Government while acting within the scope of his office or employment." But the last condition of section 1346(b) makes the government liable only if "a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." One plausible reading of that language is that there re-

mains some distinction between private and governmental action so that not all wrongful acts by the government subject it to tort liability. We conclude that quasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law. Thus, there is here no jurisdiction to entertain a suit against the federal government.

The Supreme Court has made clear its desire to avoid the " 'non-governmental'-'governmental' quagmire that has long plagued the law of municipal corporations." *Indian Towing Co. v. United States,* 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955). Our holding today does not draw us into this quagmire. Whether a particular action is a "quasi-legislative" or "quasi-adjudicative" one is a judicial judgment frequently made. *See, e.g., infra* pp. 394–395. It is a judgment involving very different factors than those employed in determining whether an action is on the "operational level" of governmental activity. *See, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (operating a lighthouse); *Rayonier Inc. v. United States,* 352 U.S. 315, 317–19, 77 S.Ct. 374, 375–76, 1 L.Ed.2d 354 (1957) (fighting fires); *Downs v. United States,* 522 F.2d 990, 997 (6th Cir.1975) (attempted stopping of a hijacking).

This conclusion, like that with respect to the discretionary function exception, does not rest upon the compulsion of the statute's language, but we think both conclusions are compelled by considerations to which we now turn.[2]

---

**2.** Because we hold that this court has no jurisdiction under section 1346(b), it is unnecessary for us to decide whether 15 U.S.C. § 2053(h)(1)(A) constitutes a separate basis of liability. A claim under section 1346(b) is a prerequisite to recovery. Since we hold that no claim is made out under section 1346, appellants' 2053 claim is of no avail. Nevertheless, even assuming *arguendo* that section 1346 afforded appellants a remedy, section 2680 would still stand as a bar to this court's jurisdiction; section 2053 would not help appellants.

Count I of the Amended Complaint alleges tortious misrepresentation with an eye to 15

U.S.C. § 2053(h)(1)(A). Section 2053(h)(1)(A) is an exception to section 2680. Similarly, Count III, which alleges grossly negligent or unreasonable violation of a statute, is directed toward section 2053(h)(1)(B). Section 2053(h) provides that:

> Subsections (a) and (h) of section 2680 of title 28 do not prohibit the bringing of a civil action on a claim against the United States which—
> (1) is based upon—

### C.

Appellants ask us to make a major innovation in the law by holding that the FTCA provides damage actions as an additional means of policing the internal procedures of governmental agencies. They have not, however, given us particularly good reasons for such an extraordinary step, and everything we have seen counsels against it. There is, in the first place, absolutely no evidence that in enacting the FTCA Congress intended to police internal governmental law-making procedures with damage actions. Appellants' theory of governmental liability because of the CPSC's failure to follow the procedures specified by section 371(e) of the Federal Food, Drug, and Cosmetic Act would seem to impose liability for any agency's failure to follow procedures prescribed by any regulation or statute, including the Administrative Procedure Act. Congress has provided elaborate mechanisms of judicial review so that rules adopted by improper procedures may be declared nullities. Nowhere, so far as we are aware, has Congress stated that, in addition, the affected parties could collect damages from the government. Surely, so striking a mode of policing procedural regularity as the use of damage actions for

(A) misrepresentation or deceit . . . on the part of the Commission or any employee thereof, or

(B) any exercise or performance, or failure to exercise or perform, a discretionary function on the part of the Commission or any employee thereof . . . , which exercise, performance, or failure was grossly negligent; and

(2) is not made with respect to any agency action (as defined in section 551(13) of title 5).

In the case of a civil action on a claim based upon the exercise or performance of, or failure to exercise or perform, a discretionary function, no judgment may be entered against the United States unless the court in which such action was brought determines (based upon consideration of all the relevant circumstances, including the statutory responsibility of the Commission and the public interest in encouraging rather than inhibiting the exercise of discretion) that such exercise, performance, or failure to exercise or perform was unreasonable.

The statute makes it plain that the exception to section 2680 operates only on claims that are

millions or hundreds of millions of dollars would have been mentioned. Appellants have drawn our attention to no language in any statute or any legislative history that suggests a conscious intention by any member of Congress to accomplish such a result. That in itself would appear nearly conclusive of the issue before us. It may also be significant that no plaintiffs before those here have ever advanced such a theory. These are negative reasons to doubt that Congress intended the government to be liable in damages for adopting a rule through defective procedures. But there are positive reasons as well to reject any such conclusion.

The Supreme Court's discussion of the legislative history of the FTCA in *Dalehite v. United States,* 346 U.S. 15, 24–30, 73 S.Ct. 956, 962–965, 97 L.Ed. 1427 (1953), indicates that Congress intended to avoid the inevitable consequences of appellants' theory. The Court quoted an Assistant Attorney General, appearing before the House Committee on the Judiciary, who spoke for the purpose of clarifying the amendment containing the discretionary function exception. He was quoted as having said,

[It was not] intended that the constitutionality of legislation, the legality of

not with respect to "agency actions" as defined by the Administrative Procedure Act ("APA"). Under that Act,

(13) "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act;

5 U.S.C. § 551(13) (1982). Under any normal reading of words, the Tris ban was an order or rule by the CPSC and hence constituted agency action. Appellants contend, however, that since the ban was found null and void by the South Carolina district court there was no agency action.

This reading of the APA is sophistic to the point of being tail-swallowing; it imputes a self-contradictory structure to administrative law. Under section 702 of title 5, judicial relief is available to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." Without agency action, then, there is no judicial review. Under appellants' theory, a court, when it finds something an agency did to be a legal nullity (as in *Springs Mills*), would have to dismiss an APA suit for want of jurisdiction. To state appellants' thesis thus is to refute it.

regulations, or the propriety of a discretionary administrative act, should be tested through the medium of a damage suit for tort. The same holds true of other administrative action not of a regulatory nature, such as the expenditure of Federal funds, the execution of a Federal project and the like.

*Dalehite,* 346 U.S. at 27, 73 S.Ct. at 963, *quoting* Statement by the then Assistant Attorney General Francis M. Shea at *Hearings on H.R. 5373 and H.R. 6463 Before the House Comm. on the Judiciary,* 77th Cong., 2d Sess. 6, 25, 33 (1942) (footnotes omitted).[3]

Furthermore, as the Supreme Court has observed, the entire thrust of the FTCA is in a different direction from that appellants would have us give it: "Uppermost in the collective mind of Congress were the ordinary common-law torts. Of these, the example which is reiterated in the course of the repeated proposals for submitting the United States to tort liability is 'negligence in the operation of vehicles.'" *Dalehite,* 346 U.S. at 28, 73 S.Ct. at 964 (footnotes omitted).

■ This thrust of the statute and Congress' concomitant refusal to enact the rule for which appellants contend is well shown by a paragraph appearing in a number of Committee reports. This paragraph states that it is not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort. However, the common-law torts of employees of regulatory agencies would be included within the scope of the bill to the same extent as torts of nonregulatory agen-

cies." H.R.Rep. No. 2245, 77th Cong., 2d Sess. 10 (1942); S.Rep. No. 1196, 77th Cong., 2d Sess. 7 (1942); *House Hearings on H.R. 5373 and H.R. 6463, supra,* at 33, *quoted in Dalehite,* 346 U.S. at 29–30 n. 21, 73 S.Ct. at 964–965 n. 21.[4] The Tris ban has been held illegal because of the procedures by which it was adopted. It would be fatuous to conclude that while Congress explicitly did not intend that the legality of a rule should be tested by a damage action, once illegality was established in another type of action, damage actions would then lie. Clearly, violation of the statute setting the procedures by which the CPSC is to promulgate regulations is not the kind of tort which Congress intended to cover when it enacted the FTCA.

The distinction thus made between types of tort (assuming that we are dealing here with a tort at all) is firmly rooted in obvious policy differences. Tort liability under the FTCA is governed by "the law of the place where the act or omission occurred." It is entirely appropriate that a government employee's alleged tort, such as driving negligently, should be judged according to the standards of care in the community where the act occurred. The government's employee is required to behave according to the standard of reasonableness expected of all other persons performing the same function in that jurisdiction. It would be most inappropriate, however, that the quasi-legislative procedures of a government agency should be policed according to local law. This case illustrates that point. Here, as will usually be the case, the agency acted in the District of Columbia but the impact of

---

**3.** The Court continued:

Referring to a prior bill which had not contained the "discretionary function" exemption, the House Committee on the Judiciary was advised that "the cases embraced within [the new] subsection would have been exempted from the [prior bill] by judicial construction. It is not probate that the court would extend a Tort Claims Act into the realm of the validity of legislation or discretionary administrative action, but H.R. 6463 makes this specific."

*Dalehite,* 346 U.S. at 27, 73 S.Ct. at 963, *quoting* Statement by the then Assistant Attorney General Francis M. Shea at *House Hearings on*

*H.R. 5373 and H.R. 6463, supra,* at 29 (footnote omitted).

**4.** This language is similar to that used in the House Report accompanying the bill that actually became the FTCA. (The legislative history discussed by the Supreme Court in *Dalehite* concerned consideration of the bill by an earlier Congress.) The House Report said that it is neither "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort." H.R.Rep. No. 1287, 79th Cong., 1st Sess. 6 (1945).

its rule was felt by manufacturers almost everywhere but in the District of Columbia. In truth, unlike a negligent driving case, the District has no interest whatever in the regularity of the procedures followed by the CPSC here. It would be utterly anomalous to construe the FTCA so that the methods by which the CPSC arrives at a rule are judged and punished according to District tort law. Appellants claim that the District law makes it negligence per se to violate any statute. If so, the District could drastically alter the policing of the procedures of the CPSC, and every other agency quartered here, simply by changing its tort law, and such changes might well be made for reasons having nothing to do with concern about federal agency procedures. It is unlikely in the extreme that Congress delegated to the government of the District of Columbia the decision whether to police federal agency procedures having no impact upon the District through the imposition of tort liability. It is more than unlikely. Such a delegation would be so irrational as to make ludicrous the suggestion that it has been made through the FTCA.

Even more unlikely—and more absurd—is the implication of appellants' argument that Congress intended that agency decisions made outside of the District of Columbia should be held subject to damage liability according to the tort law of whatever state or municipality a federal agency happens to be in when it acts.

The only case arguably contrary to our decision here is the Second Circuit's decision in *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir.1975). In *Myers & Myers,* the Postal Service negligently and wrongfully failed to renew certain government contracts. In addition, the Postal Service, in violation of its own regulations, gave the contractor neither notice nor an opportunity to be heard prior to the debarment action. *Id.* at 1259. The contractor sued under the FTCA, claiming, as do appellants here, that the Postal Service lacked discretion to act in disregard of its own applicable regulations and of the Con-

stitution, and that the Service's conduct constituted negligence per se. *Id.* at 1261. The Second Circuit held that, although the Service's decision not to renew the contracts fell within the "discretionary function" exception of the FTCA, the Service did not have the discretion to act in contravention of its own procedural regulations. The case was remanded for a determination of whether, under local law, the Service's conduct constituted a wrongful act or negligence per se for which recovery may be had. *Id.* at 1262.

We agree that the decision to award a government contract is a discretionary one, and is therefore shielded by the discretionary function exception from giving rise to liability. Furthermore, we agree that the Service did not have the discretion, as that word is used in the ordinary sense, to violate its own rules. Nevertheless, we think that *Myers & Myers* may be distinguishable from the instant case because of the differences in the nature of the processes in issue. Selecting a government contractor is very different than legislating. The decision to award a government contract—although requiring discretion—seems to us more like a decision requiring discretion in the execution of policy than does a legislative determination, which itself requires policy judgments. Among other things, this seems true because in *Myers & Myers,* had proper procedures been followed, the plaintiff apparently would have received the contracts for whose loss he sought damages. No comparable assertion can be made here. Appellants might very well have been subjected to the same Tris ban had statutory procedures been followed. The difference in degree of certainty indicates a difference in the nature of the decisions, showing that the process involved here was more legislative in nature. Although we think this distinction real, at bottom we arrive at our decision because we do not know how to confine this new cause of action were we to accept the broad principle propounded by the appellants. Any procedural irregularity in any administrative determination would

give rise to a cause of action for damages.[5] We do not think the FTCA countenances such a result. If *Myers & Myers* stands for a contrary principle, one that would impose liability here, to that extent we disagree with that decision.

■ Basically, we do not believe that Congress, in passing the FTCA, envisioned the creation of such a sweeping challenge to administrative determinations. Congress has explicitly created the remedy for cases where an agency violates mandatory procedures in framing a rule—the rule is to be declared a nullity. Congress has not created a general governmental liability for damages in that situation.[6]

### D.

Our holding is by no means an endorsement of the Commission's behavior in this case. This is not the first time the CPSC has willfully disregarded the procedures Congress has established for it and grossly exceeded its authority. *See Pactra Industries, Inc. v. CPSC,* 555 F.2d 677 (9th Cir. 1977); *Springs Mills, Inc. v. CPSC,* 434 F.Supp. 416, 433 (D.S.C.1977). Congress has recognized the highly questionable behavior of the CPSC and has created a special remedy for the appellants. *See supra* note 6.

### III.

■ Count V of appellants' amended complaint seeks damages against the individual Commissioners, claiming that they tortiously deprived appellants of property without due process of law. *See* U.S. CONST. amend. V; *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (federal agents answerable in tort for violations of fourth amendment). Money damages are available to victims of official acts that violate the fifth amendment's due process clause. *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979) ("equal protection component" of due process clause). We assume (without deciding) that, other things being equal, appellants would be entitled to a trial on their *Bivens*-type claim.[7] Appellants, however, seek recovery for actions taken by the Commissioners in their exercise of quasi-legislative rule-making authority. Appellee Commissioners are entitled to absolute immunity from suit for such acts, and we accordingly affirm the district court.

■ The Supreme Court has determined that although qualified immunity is the rule for executive personnel, certain offices and functional roles are entitled to absolute immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982). The President of the United States, *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and prosecutors, *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), *aff'g* 12 F.2d 396 (2d Cir.1926), enjoy absolute immunity from damage actions. When an executive officer performs a function that is itself entitled to immunity, such as

---

**5.** We could, of course, confine tort claims based upon procedural irregularities to cases of an "egregious" or "extreme" nature, such as the case before us; however, if the Act applied, we would not have the authority to create such an exception. To do so would impose a condition on the statute that is not there. Furthermore, such an exception would in all probability accomplish very little since the courts would have to entertain endless litigation concerning the "egregiousness" of every procedural irregularity.

**6.** In a supplemental brief submitted after passage of the Tris Act, appellees argue that that legislation provides another ground for rejecting appellants' FTCA claim inasmuch as it creates an exclusive remedy in the Claims Court. Unlike appellees, we cannot find the word "exclusive" in the Tris Act's jurisdictional section. Nor is the legislative history of the Tris Act significant. That history contains many statements to the effect that, without such legislation, the Tris manufacturers would be remediless. We hold today that those statements were correct, but they appear to embody judgments as to what the law was, not acts of will as to what it shall be. The Tris Act does not affect our decision on appellants' FTCA claims.

**7.** Because of this assumption we need not address the issue of possible special factors counselling against our finding a *Bivens*-type cause of action.

adjudication, *see Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104–05, 53 L.Ed.2d 331 (1978) (judge performing judicial function absolutely immune from damages suit), the immunity of the role attaches to the person. *Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978) (executive officer performing adjudicative function absolutely immune). Legislation is a function entitled to absolute immunity, *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 733–34, 100 S.Ct. 1967, 1975–76, 64 L.Ed.2d 641 (1980) (Virginia Supreme Court immune when exercising legislative authority), with the immunity following the function and not the office, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405 & n. 30, 99 S.Ct. 1171, 1179, & n. 30, 59 L.Ed.2d 401 (1979) (commissioners of regional planning authority immune from damages when exercising legislative authority). From all this it is clear that when an agency exercises quasi-legislative regulatory authority, action for money damages against agency members will not lie.

The Tris ban here attacked was in the form of an amendment to the Code of Federal Regulations. 42 Fed.Reg. 18,853 (1977) (amending 16 C.F.R. § 1500.18 (1976)). It was made under regulatory authority granted the Commission. *See, e.g.,* 15 U.S.C. §§ 2057, 2058 (1976). As a general rule, regulations are an exercise of quasi-legislative administrative authority. In this case the ban was in general terms and of broad applicability, in contrast to the dismissal of one individual determined to be an executive act in *Harlow v. Fitzgerald,* the individual adjudication treated in *Butz v. Economou,* and the personal bodily injuries inflicted in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). The ban's effect was prospective (although immediate).[8] Moreover, as the district court accurately noted below, J.A. at 56, the role ·of the Commission with respect to hazardous substances is delicate, controversial and policy-laden. *See Consumers Union of United States, Inc. v. CPSC,* 491 F.2d 810, 812 (2d Cir.1974); 15 U.S.C. § 2051 (1976) (broad congressional findings and purposes underlying Consumer Product Safety Act). All of these additional factors demonstrate that the Tris ban was in substance what it was in form: an exercise of quasi-legislative power. No action for damages lies against individuals for the use of such power.

The judgment of the district court is *Affirmed.*

HARRY T. EDWARDS, Circuit Judge, concurring:

I concur only in the result reached in this case.

LUMBARD, Senior Circuit Judge, concurring:

I concur in affirmance of the district court's order which denied plaintiffs a cause of action under the Federal Tort Claims Act (FTCA), for the reasons stated by Judge Bork in Section II C. However, I do not think that result can be fit within either of the two express qualifications to the FTCA discussed in Section II A and B *supra* without straining unduly on common sense or past precedent. I would rest our affirmance squarely on the finding that Congress never intended to open the federal government to tort liability for procedural infractions in the promulgation of administrative rules.

It is axiomatic that no action lies against the United States unless Congress has authorized it. *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). Despite the broad language of the FTCA, providing that the "district courts . . . shall have exclusive jurisdiction of civil actions in claims against the United States, for money damages . . . caused by the negligent or wrongful action . . . of any em-

---

**8.** An objection might be raised that the Commission was merely applying the definition of a hazardous substance contained in 15 U.S.C. § 1261(f)(1)(A) (1976). Even if this were true, the result would be that the Commission was adjudicating a set of facts under a statutory standard and hence was entitled to quasi-judicial immunity.

ployee of the Government," § 346(b), the Supreme Court has required a clear showing that sovereign immunity has been waived in a particular situation to find jurisdiction under the FTCA. *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *Feres v. United States,* 340 U.S. 135, 144, 146, 71 S.Ct. 153, 158, 159, 95 L.Ed. 152 (1950); *accord Joyce v. United States,* 474 F.2d 215, 219 (3d Cir.1973).

Where the wrongful conduct falls within one of the "ordinary common-law torts" (*e.g.,* negligent auto accidents) that motivated the passage of the FTCA, that showing is amply made by the legislative history of the Act. *Dalehite v. United States,* 346 U.S. 15, 28 n. 19, 73 S.Ct. 956, 964 n. 19 and accompanying text (1953). But where the tort theory is novel and the legislative history silent, courts have looked beyond the Act itself for evidence of Congressional intent, considering among other things how extending tort liability in a particular case would "fit ... into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole." *Feres v. United States,* 340 U.S. at 139, 71 S.Ct. at 156 (1950). When the evidence strongly suggests no waiver was intended, courts have not hesitated so to find, notwithstanding the inability to fit the case within any express exception. *See, e.g., id.* (Congressional intent not to submit federal government to tort liability for non-combat injuries to Armed Forces members inferred, *inter alia,* from existence of alternative statutory remedy); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976) (reaffirming *Feres*); *cf. United States v. Muniz,* 374 U.S. 150, 158–162, 83 S.Ct. 1850, 1855–1857, 10 L.Ed.2d 805 (1963) (applying *Feres*-type analysis to find Congress did intend to put tortious injury to federal prisoners within the FTCA). While courts have, until now, implied exceptions to the FTCA chiefly in the *Feres* line of cases involving tort suits by members of the Armed Forces, nothing intrinsic to the *Feres* analysis mandates such a limitation.

Here, in view of the novel form of tortious conduct involved, the anomaly of submitting this distinctly federal claim to the vagaries of state law, the potentially limitless number of private suits based on agencies' procedural infractions, coupled with the unlikelihood of most plaintiffs making the necessary showing of causation to prevail, and Congress's providing an alternative remedy for procedural infractions by declaring the resulting rules unlawful, it is extremely unlikely that Congress ever intended to submit the federal government to tort liability for such infractions. On that basis alone, I would reject appellants' claim.