C.P. CHEMICAL COMPANY, INC.,
Plaintiff-Appellant,

v.

UNITED STATES of America and U.S.
Consumer Product Safety Commission,
Defendants-Appellees.

No. 313, Docket 86–6132.

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1986.
Decided Jan. 26, 1987.

Joseph A. Maria, P.C., White Plains, N.Y., for plaintiff-appellant.

Richard M. Schwartz, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., John P. Mackey, Stephen Lemberg, and Harleigh P. Ewell, New York City, of counsel), for defendants-appellees.

Before MANSFIELD *, MESKILL and MINER, Circuit Judges.

MINER, Circuit Judge:

C.P. Chemical Company appeals from a judgment of the United States District Court for the Southern District of New York (Brieant, J.) dismissing its complaint against the United States and the Consumer Product Safety Commission ("Commission" or "agency") under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"), and the Consumer Product Safety Act, 15 U.S.C. § 2053(h) ("CPSA"), for lack of subject matter jurisdiction and failure to state a claim. The suit arose from the Commission's ban on the use of formaldehyde-emitting foam insulation, 47 Fed. Reg. 57,488 (1982). The Fifth Circuit ruled, in *Gulf South Insulation v. U.S. Consumer Product Safety Commission*, 701 F.2d 1137, 1148–50 (5th Cir.1983), that the ban was improper because it was promulgated under the procedures of the CPSA, 15 U.S.C. §§ 2057, 2058, 2079(d), rather than under the appropriate procedures of the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1276. C.P. Chemical alleged that the Commission erroneously included within the ban its insulation product, Tripolymer 105, which emits no formaldehyde gas. The district court held that the FTCA waiver of sovereign immunity does not extend to the agency conduct forming the basis for this tort action against the United States and the Commission. The court also held that the CPSA

provides no predicate for this action. For the reasons stated below, we affirm.

## BACKGROUND

C.P. Chemical Company is a family-owned New York corporation that manufactured "Tripolymer 105," a foam insulation product that was mixed on the job site and pumped between a structure's walls. Tripolymer 105, a phenal-urea based product, competed with a similar product—urea-formaldehyde foam insulation ("UFFI"). However, unlike Tripolymer 105, UFFI was found to emit detectable levels of formaldehyde gas.

On March 5, 1979, the Consumer Product Safety Commission announced an investigation of UFFI in response to complaints of "acute irritant symptoms"—irritations to the eye, nose and throat and related symptoms allegedly attributable to the formaldehyde emissions of the formaldehyde-based foam insulation. 44 Fed.Reg. 12,080 (1979). After extensive information gathering, the Commission proposed a rule that would ban installation of UFFI in all residences and public structures, 46 Fed.Reg. 11,188 (1981). Pursuant to the rulemaking procedures of the Consumer Product Safety Act, 15 U.S.C. §§ 2058, 2079(d), the agency found that UFFI posed an unreasonable risk of acute irritant effects and cancer. The Commission issued its final ban on the use of UFFI in residences and schools on April 2, 1982. 47 Fed.Reg. 14,-366 (1982). A memorandum issued on April 14, 1982 stated that it was the staff's "preliminary opinion that Tripolymer 105 falls within the definition of urea-formaldehyde foam insulation as specified in the Commission's ban." Joint App. at 209. As the district court noted, "this press release effectively terminated the plaintiff's insulation business." Joint App. at 251.

C.P. Chemical Company, along with other foam insulation manufacturers, sought judicial review of the UFFI ban pursuant to 15 U.S.C. § 2060. On April 7, 1983, the

---

* Judge Mansfield participated in oral argument in this case and voted before his death on January 7, 1987 in favor of the disposition reached in this opinion.

Fifth Circuit held that the Commission's rule was not supported by substantial evidence and therefore vacated the ban. *Gulf South Insulation v. U.S. Consumer Product Safety Commission*, 701 F.2d 1137 (5th Cir.1983). While expressly declining to address C.P. Chemical's claim that it should have been exempted from the ban because its product was safer than UFFI, 701 F.2d at 1140, the court also held that the Commission had followed the wrong rulemaking procedures when it promulgated the rule under the informal procedures of the Consumer Product Safety Act, 15 U.S.C. §§ 2058, 2079(d). The agency should have proceeded under the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1276, which requires a formal hearing wherein rules of evidence are applied and the right to confront and cross-examine witnesses is recognized, 701 F.2d at 1149–50, *see* 15 U.S.C. § 1262(a)(2).

Thereafter, on December 23, 1983, C.P. Chemical filed an administrative claim, alleging that the Commission recklessly disseminated false and derogatory information about its product, and that the Commission was grossly negligent in failing to follow the appropriate rulemaking procedure under the Federal Hazardous Substances Act. That claim was denied by the Commission because it was based on agency action as defined by 5 U.S.C. § 551(13) and therefore was prohibited by 15 U.S.C. § 2053(h)(2), which bans such claims. Joint App. at 16.

On August 24, 1984, C.P. Chemical timely filed suit in the United States District Court for the Southern District of New York, seeking $700,000,000 in damages on two causes of action identical to those asserted in its administrative claim: (1) the Commission was grossly negligent in failing to follow the appropriate rulemaking procedure; and (2) the Commission recklessly disseminated false and derogatory information about Tripolymer 105. Defendants moved to dismiss the complaint pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a claim. The district court

entered final judgment for defendants on three grounds: (1) that the Federal Tort Claims Act did not waive sovereign immunity for nationwide agency conduct that could not be committed by a private individual, 28 U.S.C. §§ 1346(b), 2674; (2) that the agency conduct at issue fell squarely within the discretionary function exception, or other exceptions set forth in 28 U.S.C. § 2680(h); and (3) that the complaint did not state a claim within the jurisdiction of the CPSA, 15 U.S.C. § 2053(h).

On appeal, C.P. Chemical contends that sovereign immunity has been waived under the Federal Tort Claims Act, 28 U.S.C. § 2680, because a private individual would be held liable under New York law for tortious interference with business, and because the agency failed to use "due care" when it applied the wrong rulemaking procedure. C.P. Chemical also contends that the district court erred in applying the discretionary function exception. Finally, C.P. Chemical asserts that by failing to follow the appropriate rulemaking procedure, the Commission's gross negligence was outside the bounds of its authority and therefore did not constitute "agency action," so that a civil suit would lie under section 2053(h) of the CPSA.

## DISCUSSION

### A. *Federal Tort Claims Act*

*Purposes of the Act*

When the FTCA was enacted, "[u]ppermost in the collective mind of Congress were the ordinary common-law torts. Of these, the example which is reiterated in the course of the repeated proposals for submitting the United States to tort liability is 'negligence in the operation of vehicles.'" *Dalehite v. United States*, 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953) (footnotes omitted). The *Dalehite* Court's discussion of the FTCA's legislative history contains ample evidence that while Congress intended to allow garden-variety tort suits against the United

States,[1] it was concerned with avoiding precisely the type of liability appellant asserts here. *Id.* at 27, 73 S.Ct. at 963–64.

The House Report accompanying the bill that became the FTCA included the specific statement that it is neither "desirable [n]or intended that the constitutionality of legislation, or the legality of a rule or regulation, should be tested through the medium of a damage suit for tort." H.R.Rep. No. 1287, 79th Cong., 1st Sess. 6 (1945). *See also* Statement of Assistant Attorney General Francis M. Shea, *Hearings on H.R. 5733 and H.R. 6463 Before the House Comm. on the Judiciary,* 77th Cong., 2d Sess. 6, 25, 33 (1942). The earlier Committee Reports echo this concern:

> [It is not] desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort. However, the common-law torts of employees of regulatory agencies would be included within the scope of the bill to the same extent as torts of nonregulatory agencies.

H.R.Rep. No. 2245, 77th Cong., 2d Sess. 10 (1942); S.Rep. No. 1196, 77th Cong., 2d Sess. 7 (1942); *House Hearings on H.R. 5373 and H.R. 6463, supra,* at 33.

In the case before us, the wrongful conduct at issue is an agency's failure to select the appropriate rulemaking procedure in promulgating an administrative regulation. Thus, we must decide whether the FTCA's limited waiver of sovereign immunity extends to the Commission's procedural error in banning UFFI under the Consumer Product Safety Act, rather than under the Federal Hazardous Substances Act. In essence, appellant urges us to find a waiver of sovereign immunity and allow a finding of tort liability for an agency's failure to follow procedures prescribed by a regulation or statute.

We conclude, for the reasons given above, that the purposes of the Act would not be served by such a finding. We also conclude that two specific provisions of the statute itself preclude C.P. Chemical from establishing the requisite waiver: the requirement that the government be held liable only if a private person would be liable for the same conduct, 28 U.S.C. §§ 1346(b), 2674, and the provision excluding claims based upon the performance or non-performance of a discretionary function, 28 U.S.C. § 2680(a).

*The Private Analog Requirement*

Section 1346(b) of the FTCA confers jurisdiction on district courts for claims seeking money damages arising from tortious actions of employees of the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The plain meaning of section 1346(b) is that the United States cannot be held liable when there is no comparable cause of action against a private citizen. The language of 28 U.S.C. § 2674 restates this threshold limitation on the FTCA's waiver of sovereign immunity: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." The Supreme Court, in addressing the congressional intent behind section 2674, concluded that Congress limited the bases for the United States' liability to those "circumstances that would bring private liability into existence." *Feres v. United States,* 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). Thus, as to certain governmental functions, the United States cannot be held liable, for no private analog exists. "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal

---

1. The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself. 28 U.S.C. § 2679(a); *see Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252, 1256 (2d Cir.1975); *Jayvee Brand v. United States,* 721 F.2d 385, 388 (D.C.Cir.1983). There is therefore no basis for any claim against the Commission in this action.

government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Jayvee Brand v. United States*, 721 F.2d 385, 390 (D.C.Cir.1983); K.C. Davis, 5 *Administrative Law Treatise* §§ 27:5, 27:16 (1984).

The Commission's ban of UFFI was promulgated in response to its statutory duty to protect the public against unreasonable risks of injury posed by consumer products. *See* 15 U.S.C. § 2051(a). The Commission's conduct clearly was a quasi-legislative activity for which we find no private counterpart. There is simply no comparable rulemaking activity in private life, and appellant has failed to point us toward an analogous private action recognized under New York's tort law.

*The Discretionary Function Exception*

■ The "discretionary function" exception, 28 U.S.C. § 2680(a), provides an additional rationale for finding that the FTCA does not waive sovereign immunity in the circumstances before us. Section 2680(a) provides that:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.*

28 U.S.C. § 2680 (emphasis added). The second clause of section 2680(a) "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984); *see Hendry v. United States*, 418 F.2d 774, 782 (2d Cir. 1969) ("It is clear that § 2680(a) was in-

tended to protect the validity of governmental regulations from challenge in a tort action for damages...."). In *Dalehite v. United States*, 346 U.S. at 34, 73 S.Ct. at 967, the Supreme Court described the discretion protected by section 2680(a) as "the discretion ... to act according to one's judgment of the best course." In *Caban v. United States*, 671 F.2d 1230 (2d Cir.1982), we noted that, by its very nature, the promulgation of a regulation is a discretionary act entitled to immunity under section 2680(a) because formulating a rule involves balancing the government's interest in protecting public welfare against competing private interests. In promulgating the ban on UFFI, the Commission balanced general safety considerations against the specific interests of the manufacturers. Whether or not the substantive ban was erroneous or an abuse of discretion, section 2680(a) applies.

While the Commission's substantive decision to ban UFFI was discretionary, and therefore within the FTCA exemption of section 2680(a), appellant contends that the Commission lacked the discretion to decide which rulemaking procedure to apply. However, as the D.C. Circuit has recognized, the procedures by which a rule is adopted are integral to, and intertwined with, the decision to adopt the substantive regulation. *Jayvee Brand*, 721 F.2d at 389. Thus, the court concluded that "making a discretionary decision without following mandated procedures should be characterized, for the purposes of the FTCA, as an abuse of discretion. It follows that the discretionary function exception applies...." *Id.* at 390.

Appellants assert that our ruling in *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252 (2d Cir.1975), governs the case at bar and requires a holding opposite to the D.C. Circuit's ruling in *Jayvee Brand.* In *Myers,* we noted that the failure of the Postal Service to comply with its own regulations in awarding a government contract might constitute negligence under state law, *id.* at 1261, and we remanded the case, *inter alia,* for a deter-

mination of whether such a failure amounted to actionable negligence under state law. *See also Madison v. United States,* 679 F.2d 736, 741 (8th Cir.1982) (once government adopts rules by which safety inspections would be conducted, it is obligated to take reasonable steps to enforce compliance with those regulations; remanded for a determination of whether a cause of action existed under Arkansas law). However, appellant's reliance on *Myers* is misplaced. *Myers* presented a wholly different issue from the one now before us. *Myers* involved an agency's application of a pre-existing rule, rather than an agency's rulemaking procedure. In the rulemaking process, an agency is involved in a higher order of policy making, one involving a greater degree of discretion; it can promulgate a rule, or decide not to do so, on the basis of policy considerations. Rule application, on the other hand, is more mechanical and involves less discretion; the agency, by promulgating the rule, has already asserted its broad policy choices.

Furthermore, this is *not* a case where an agency ignored its own regulations or the clear mandate of statutory procedure. Rather, as discussed below, based on a determination within its province, the Commission was required to follow one of two routes in promulgating its regulation—the procedures prescribed by either the CPSA or the FHSA. The Fifth Circuit determined that the Commission made this underlying determination erroneously, and as a result followed the wrong rulemaking procedure, *Gulf South,* 701 F.2d at 1149–50. For that reason, *inter alia,* the ban on UFFI was void.

15 U.S.C. § 2079(d) of the Consumer Product Safety Act provides:

> A risk of injury which is associated with a consumer product and which could be eliminated or reduced to a sufficient extent by action under the Federal Hazardous Substances Act ... may be regulated under this [Act] only if the Commission by rule finds that it is in the public interest to regulate such risk of injury under this [Act].

Accordingly, the Commission *must* proceed in compliance with the more formal procedures of the Federal Hazardous Substances Act, rather than those under the CPSA, *unless* it makes a finding either that the risk of injury could not be regulated sufficiently under the FHSA, or that it is in the public interest to proceed under the CPSA. Here, the Commission proceeded under the CPSA after finding that *both* tests were met: (1) the protections afforded by the FHSA were insufficient, because the FHSA is applicable only to household products, 15 U.S.C. § 1261(q)(1)(B), and the Commission originally believed that the danger posed by formaldehyde gas required the rule to extend to all buildings; *and* (2) it was in the public interest to regulate UFFI under the CPSA to achieve a speedy resolution to what was viewed as a dangerous situation.

Although the Fifth Circuit held that these findings were erroneous, they were adopted by the Commission in the exercise of its discretion. The D.C. Circuit, in *Forester v. Consumer Product Safety Commission,* 559 F.2d 774 (D.C.Cir.1977), noted that

> [d]espite the negative language of [this section], it broadens the [Commission's] jurisdiction under the CPSA by permitting it *in its sound discretion* to regulate products under [the CPSA] which formerly would have been subject to regulation exclusively under the FHSA....

*Id.* at 784 n. 11 (emphasis added). Here, the Commission was required to inject its "judgment of the best course," *see Dalehite,* 346 U.S. at 34, 73 S.Ct. at 967, into its determination of whether the CPSA requirement had been met. Findings that necessitate a balancing of policy considerations may require a reviewing court to find that an agency erred and therefore used the wrong procedure, as the Fifth Circuit did with the UFFI ban. Such an error, however, cannot form the basis of governmental tort liability because of the discretionary function exception.

### B. *Consumer Product Safety Act*

▮ Appellant contends that this suit is permitted against the United States by the

**40**

Consumer Product Safety Act, 15 U.S.C. § 2053(h), which provides that 28 U.S.C. §§ 2680(a) and (h) do not prohibit a claim that:

(1) is based upon—

(A) misrepresentation or deceit on the part of the Commission or any employee thereof, *or*

(B) any exercise or performance, or failure to exercise or perform, a discretionary function on the part of the Commission or any employee thereof, which exercise, performance, or failure was grossly negligent; *and*

(2) is not made with respect to any agency action (as defined in section 551(13) of title 5).

15 U.S.C. § 2053(h) (emphasis added). We note that the CPSA does not alter the threshold limitation on sovereign immunity imposed by 28 U.S.C. §§ 1346(b) and 2674 —threshold limitations that we hold above applicable to this case.

█ In the case at bar appellants have failed to allege either misrepresentation or deceit on the part of the Commission, as required by 15 U.S.C. § 2053(h)(1)(A). Further, the district court found that the conduct of the Commission was not "grossly negligent" within the meaning of section 2053(h)(1)(B). Joint App. at 253. Appellant has not directed us toward any evidence that the district court's finding in that regard was erroneous. Thus, appellant has failed to meet either of the alternative requirements of section 2053(h)(1).

Finally, inasmuch as the Commission was engaged in rulemaking—unquestionably "agency action" as defined in 5 U.S.C. § 551(13)—when it banned the use of UFFI and when it clarified that rule as including Tripolymer 105, appellant does not meet the necessary condition stated in 15 U.S.C. § 2053(h)(2). "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement,

interpret, or prescribe law or policy...." 5 U.S.C. § 551(4). The actions of the Commission in rulemaking and in clarifying its rule fit squarely within these definitions. Therefore we hold that 15 U.S.C. § 2053(h) is of no avail to appellants.

## CONCLUSION

For the reasons stated above, we hold that the district court correctly dismissed the complaint for lack of subject matter jurisdiction and for failure to state a claim. The judgment of the district court is affirmed.