**SEA AIR SHUTTLE CORPORATION,**
**Plaintiff, Appellant,**

**v.**

**UNITED STATES of America,**
**Defendant, Appellee.**

**No. 96–1865.**

United States Court of Appeals,
First Circuit.

Heard March 6, 1997.

Decided April 24, 1997.

Lawrence E. Duffy, San Juan, PR, for appellant.

Fernando Campoamor–Sanchez, Trial Attorney, Aibonito, PR, with whom Frank W. Hunger, Assistant Attorney General, and Guillermo Gil, United States Attorney, Washington, DC, were on brief for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Sea Air Shuttle Corp. ("Sea Air") filed this damages action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2180, claiming that it was unlawfully deprived of the right to use seaplane ramps in the Virgin Islands and that the Federal Aviation Administration's (FAA) failure to enforce the law makes it responsible for the company's resulting economic hardship. The district court dismissed Sea Air's complaint on the ground that the Federal Aviation Act (FA Act) provides federal courts of appeals with exclusive jurisdiction to review FAA action, *see* 49 U.S.C. app. § 1486(a),[1] rendering Sea Air's FTCA complaint an improper collateral attack on the administrative process. We agree that the case must be dismissed, but rely primarily on an alternative reason.

## I. *Background*

The original protagonist in this case was Hurricane Hugo, which struck the United States Virgin Islands in September 1989 and led to the demise of the company that had been providing passenger air service between and among the various islands. Seeking to find a new airline to utilize the seaplane ramps it owned on St. Thomas and St. Croix, the Virgin Islands Port Authority (VIPA) in early 1990 issued a request for exclusive lease proposals. One of the eight companies that responded was Caribbean Air Services, Inc. (CAS), which later assigned its interest to appellant Sea Air.

---

1. Congress in 1994 recodified the Federal Aviation Act, without substantive change, at 49 U.S.C. §§ 40101–49105. We, like the parties, will use the code numbers in effect at the time of the events that gave rise to this action.

It is undisputed that VIPA's staff considered the CAS proposal to be the most viable of the three bids recommended for further consideration by VIPA's Governing Board. *See Sea Air Shuttle Corp. v. Virgin Islands Port Auth.*, 800 F.Supp. 293, 295 (D.Vi.1992). The facts surrounding the various proposals, and the resulting decision of the VIPA board to offer an exclusive lease to a Sea Air competitor, Caribbean Airboats, Inc. (CAI), are fully detailed in the district court's thorough opinion in a related case, *Sea Air Shuttle*, 800 F.Supp. at 295–98, and it is unnecessary to repeat them here.

It suffices to say that appellant Sea Air was displeased with the outcome of the bid process, and, based on a federal statute barring exclusive lease agreements for the use of air navigation facilities, *see* 49 U.S.C. app. § 1349,[2] unsuccessfully sought access to the contested ramps. Sea Air then sued CAI and VIPA in the Virgin Islands federal district court based on federal, constitutional and Virgin Islands law. That action ultimately also proved unsuccessful, with the court ruling in March 1992 that VIPA was entitled to enter into an exclusive leasing arrangement with CAI. *See* 800 F.Supp. at 304–05.

Meanwhile, Sea Air completed the steps for receiving an air carrier certificate from the FAA, and began Caribbean operations in March 1991 without using the St. Thomas and St. Croix ramps. In October of that year, Sea Air's president wrote to then Secretary of Transportation Samuel Skinner to inform him of the lawsuit pending against VIPA and CAI. Allegedly because of its inability to use the two contested seaplane ramps, appellant encountered severe financial difficulties and voluntarily filed a petition for bankruptcy under Chapter 11 in January 1992.

A month later, responding to Sea Air's letter to Secretary Skinner and other communications, the FAA informed the company that efforts to resolve the dispute informally had failed, and that Sea Air could file an administrative complaint against VIPA pursuant to 49 U.S.C. app. § 1482.[3] Sea Air did so in March 1992. It asserted that VIPA was in violation of federal law barring exclusive lease agreements for facilities that receive federal funding, *see* 49 U.S.C. § 1349(a), and that it had unlawfully interfered with Sea Air's route structure, *see* 49 U.S.C. § 1305.[4] It is the FAA's failure to act on that still pending complaint that underlies Sea Air's claim for damages in this action.

On June 29, 1992, Sea Air's bankruptcy proceedings were converted to Chapter 7. The next day, Sea Air wrote to then Secretary of Transportation Andrew Card accusing the FAA of "allow[ing] the illegal conduct of the VIPA to continue, thereby causing the Chapter 7 proceeding," and urging "immediate corrective action." *See* App. at 160, 163.

On March 4, 1993, Sea Air filed a claim for money damages with the Department of Transportation and FAA, claiming that the corporation had suffered nearly $13 million in damages because of the FAA's negligent failure to act on Sea Air's administrative complaint. The claim was denied three months later and, pursuant to the provisions of the FTCA, Sea Air subsequently filed this lawsuit.

---

**2.** Section 1349(a) states, in relevant part: "There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended." There is no dispute that VIPA has received federal funds.

**3.** Section 1482(a) states, in relevant part:

Any person may file with the Secretary of Transportation ... a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter, or of any requirement established pursuant thereto....

**4.** Section 1305 is titled "Federal preemption," and subsection (a)(1) states, in relevant part: [N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation. Sea Air asserted in its FAA complaint that VIPA's denying it the use of the ramps "amount[s] as surely to the regulation of the routes of the Complainant as would the enactment of an actual law or regulation relating to such routes...."

The district court dismissed the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The court held that, pursuant to 49 U.S.C. app. § 1486,[5] federal courts of appeals have exclusive jurisdiction to review the FAA's alleged failure to act on Sea Air's administrative complaint, and that an FTCA action would be an improper collateral attack on the administrative process. In a footnote at the conclusion of its opinion, the court identified two additional factors rendering the complaint not viable: first, that it was based solely on the FAA's alleged failure to comply with a federal statute, and federal statutes do not create actionable duties under the FTCA; and, second, that the challenged conduct was protected from suit by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a).

On appeal, Sea Air contends that an FTCA action is compatible with the pending administrative process because its objective—to remedy the negligence of government actors with damages—is outside the scope of that process. Appellant additionally disputes the alternative bases for dismissal noted by the district court.

## II. *Discussion*

The analysis in this case logically is divided into two stages. The first focuses on the Federal Aviation Act, and whether that statute bars a complainant from simultaneously seeking relief through the administrative process and through an FTCA claim. The second stage focuses specifically on the asserted FTCA claim: does it rest on an actionable tort duty and, if so, is the allegation nonetheless non-actionable because it addresses discretionary conduct that is immunized from legal challenge? If, as the district court held, the only way to challenge the FAA's failure to take action on a complaint within its jurisdiction is through a direct appeal or a related proceeding, such as mandamus, then the second stage will never be reached. If, however, federal law does not categorically bar a parallel tort suit, the viability of the specific claim must be examined.

■ The district court stopped at stage one, holding that Sea Air could pursue only the remedial path carved out by the FA Act. It thus held that the FAA's failure to act in a timely manner on Sea Air's complaint could be addressed only through a petition for mandamus that had to be filed in the court of appeals—the court with exclusive jurisdiction over appeals from FAA decisions. *See* 49 U.S.C. app. § 1486(a).[6]

Sea Air energetically debates that outcome on appeal. It contends that the jurisdictional limitation is inapplicable here because its complaint is not about an FAA decision, but about the agency's negligent performance of its responsibilities. It points out that the FTCA confers jurisdiction on district courts for damages actions against federal actors based on common law negligence principles, and emphasizes that the FTCA contains no exception that would exclude this case from its scope. It is significant, Sea Air contends, that the FTCA action seeks a damages remedy, which is unavailable through the administrative process.

■ We decline to consider whether an FTCA claim based on FAA inaction ever could be cognizable, though we think it unlikely. It is well established that the exclusive jurisdiction given to the courts of appeals to review FAA actions also extends to lawsuits alleging FAA delay in issuing final orders. *See George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421 (11th Cir.1993); *Telecommunications Research & Action v. FCC*, 750 F.2d 70, 76 (D.C.Cir.1984) ("TRAC"). This grant, together with appellant's acknowledgment that there is no private right

**5.** Section 1486(a) states, in relevant part:

Any order, affirmative or negative, issued by the Board or Secretary of Transportation under this chapter ... shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia....

**6.** Our review of a finding of lack of subject matter jurisdiction is *de novo*. *Coventry Sewage Ass. v. Dworkin Realty Co.*, 71 F.3d 1, 3 (1st Cir.1995).

of action under the relevant provisions of the FA Act, *see Interface Group, Inc. v. Massachusetts Port Auth.,* 816 F.2d 9, 14–15 (1st Cir.1987); *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97 (2d Cir.1986),[7] suggests a congressional intent to limit review of the FAA's handling of complaints to the scheme set out in § 1486(a). The fact that the FTCA does not explicitly *exclude* such a claim in no way serves to support its existence.

We recognize, nonetheless, that there is some logic in Sea Air's contention that, because section 1486 does not embrace damages claims, a plaintiff harmed by the negligent conduct of FAA employees should be able to seek a remedy under the FTCA, since the FTCA was designed specifically to provide redress for the negligence of government actors. *See Beins v. United States,* 695 F.2d 591, 597–98 (D.C.Cir.1982) (FTCA claim seeking damages for denial of medical certificate may be brought against FAA); *cf. Mace v. Skinner,* 34 F.3d 854, 859–60 (9th Cir.1994) (no federal question jurisdiction over actions against FAA only as to "those classes of claims" reviewable under section 1486 of FA Act). Presumably, as the D.C. Circuit suggested in *Beins,* a court could avoid conflict with the administrative scheme by staying a timely filed FTCA action pending the outcome of the administrative process. *See Beins,* 695 F.2d at 599.

■ We need not, however, delve any more deeply into this issue because, even if an FTCA claim were permitted,[8] it would fail here at the second stage of analysis. It is virtually axiomatic that the FTCA does not apply "where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs," *Johnson v. Sawyer,* 47 F.3d 716, 727–28 (5th Cir.1995) (*en banc* ) (citation omitted). *See also, e.g., Art–Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157–60 (D.C.Cir.1985); *Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir. 1977); *Sellfors v. United States,* 697 F.2d 1362, 1365 (11th Cir.1983). In other words, violation of a federal statute by governmental actors does not create liability unless state law would impose liability on a "private individual under like circumstances," 28 U.S.C. § 2674. *See Myers v. United States,* 17 F.3d 890, 899 (6th Cir.1994); *see also Howell v. United States,* 932 F.2d 915, 917 (11th Cir. 1991).

■ The challenged conduct of the Department of Transportation and FAA does not meet that "private individual" standard. At issue here is the United States' failure, through the Secretary of Transportation and FAA, to take enforcement action under the statute that prohibits exclusive leases for aviation facilities that receive federal funding, 49 U.S.C. app. § 1349, and the statute that bars non-federal lawmaking relating to air carrier rates, routes and services, *id.* at § 1305(a).[9] The fact that oversight of air carriers is a peculiarly governmental function does not, of course, necessarily preclude FTCA coverage, as the Supreme Court explained in *Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 76 S.Ct. 122, 124–25, 100 L.Ed. 48 (1955). The Court held there that the United States could be liable under the FTCA for the Coast Guard's negligence in the operation of a lighthouse, observing that "it is hornbook tort law that one who undertakes to warn the public of a dan-

---

7. In *Interface Group,* we considered the exclusive rights bar of section 1349(a) and noted that the "provision taken as a whole suggests that Congress sought to benefit the public at large, not carriers in particular." 816 F.2d at 14.

8. As the cases relied upon by the United States and the district court make clear, federal appellate courts unquestionably are the exclusive forum for appeals of FAA rulings, or for efforts to instigate action on pending FAA complaints. *See, e.g., George Kabeller, Inc. v. Busey,* 999 F.2d

1417, 1421 (11th Cir.1993); *Telecommunications Research & Action v. FCC,* 750 F.2d 70, 76 (D.C.Cir.1984). The open question is whether this exclusive jurisdiction to review the administrative process automatically forecloses a tort suit, even if all elements of tort liability are present.

9. The complaint additionally invoked provisions of more general scope that are less useful for Sea Air's argument.

ger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner," *id.*.

■ No comparable common law principle is at play in this context, however. What is necessary is "some relationship between the governmental employee[s] and the plaintiff to which state law would attach a duty of care in purely private circumstances," *Myers*, 17 F.3d at 899.[10] The controversy here wholly concerns the FAA's alleged failure to perform its regulatory functions vis a vis an entity that is out-of-compliance with federal laws and rules. Its sole obligation in enforcing the exclusive lease prohibition is to cut off federal funding. *See* DOT/FAA Order 5190.1A, § 10 (Enforcement) (App. at 302). Although the Secretary of Transportation or an authorized representative has the *discretion* to seek an injunction or other process barring further violation of the FA Act, *see* 49 U.S.C. app. § 1487(a), this optional regulatory remedy cannot be deemed to give rise to an enforceable duty to any individual victim of the unlawful conduct. Sea Air has pointed to no case utilizing a similar basis for liability in any of the relevant jurisdictions.[11]

■ In short, Sea Air has challenged a type of conduct "that private persons could not engage in, and hence could not be liable for under local law," *Sky Ad, Inc. v. McClure*, 951 F.2d 1146, 1147 & n. 2 (9th Cir.1991) (quoting *C.P.Chemical Co. v. United States*, 810 F.2d 34 (2d Cir.1987)).[12] As we observed in rejecting an FTCA claim in another FAA context, "even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability," *Clemente*, 567 F.2d at 1149.

Sea Air attempts to establish an actionable link between the government's conduct and its own adversity by pointing to the FAA's grant to it of an air carrier certificate to operate in the Caribbean, including between the ramps at issue. It claims that this authorization, following Sea Air's fulfillment of numerous prerequisites, imposed a duty on the FAA to ensure its access to the approved routes. We think not. Sea Air points to nothing in the FA Act suggesting that the FAA's permission for it to operate in a given location is more than a green light to fly, if and when the arrangements are made with the necessary air facilities. Although federal rules govern the availability of such facilities to interested parties, Sea Air has acknowledged that the statutorily prescribed recourse for VIPA's failure to abide by the non-exclusive lease rules is for the FAA to

---

**10.** The law at issue is the state or local law of the relevant jurisdiction(s), here alleged to be the Virgin Islands, Puerto Rico, the District of Columbia, and Georgia. The FAA's Southern Region is based in Atlanta.

**11.** Sea Air argues that "[t]he failure of two Secretaries of Transportation and their designees to enforce the statutes and Sea Air's rights and privileges, where only they and/or their designees could act to do so, is the 'garden variety common law torts', recognized by State law and the common law, anywhere within the jurisdiction of the United States."

Reduced to its essence, this argument is no more than a claim that the United States should be liable for failing to meet its statutory obligations. Even in states that have a general doctrine of negligence *per se* based on violation of statutes, courts have declined to find this an adequate basis for an FTCA claim against the United States. *See Johnson v. Sawyer*, 47 F.3d 716, 728–29 (5th Cir.1995) (*en banc*). We agree

that an FTCA action is "unavailable where '[t]he existence or nonexistence of the claim' 'depends entirely upon Federal statutes.'" *Id.* at 728 (quoting *United States v. Smith*, 324 F.2d 622, 624–25 (5th Cir.1963)). *Cf. Moody v. United States*, 774 F.2d 150, 157 (6th Cir.1985) (although finding no actionable duty, holding that United States could be held liable under negligence per se doctrine because Tennessee law exposes private individuals to liability for violation of a federal regulation).

**12.** In *Sky Ad*, the plaintiff claimed, *inter alia*, that the United States was liable under the FTCA for the FAA's alleged failure to adhere to the procedures required to promulgate a new rule. 951 F.2d at 1147. Sea Air attempts to distinguish *Sky Ad* from its own case because it involved the FAA's "quasi-legislative" powers to issue rules. The underlying principle, however, is the same: if the challenged conduct is uniquely governmental, meaning there is no state private party analogue, the United States may not be sued under the FTCA.

cut off its federal funding. Further sanctions are discretionary. Sea Air, therefore, cannot reasonably have relied on the FAA's securing it access to the two ramps, and there consequently is no basis for finding a duty under state law that would support an FTCA claim.

Our holding does not mean that a potential beneficiary of a federal law is helpless in the face of serious violations and agency inaction. As the district court noted, appellant could have pursued a writ of mandamus from the court of appeals. *See, e.g., TRAC,* 750 F.2d at 76. Although such an approach would not have provided Sea Air with the damages remedy it now seeks, filing of the formal FAA complaint and timely pursuit of mandamus might have alleviated the loss—assuming, of course, that its challenge to the exclusive lease proved meritorious.[13]

We note, finally, our agreement with the district court's observation that the FTCA's discretionary function exception would serve as an alternative basis for dismissal of Sea Air's action. As we have explained, the statutory penalty for violating the exclusive lease prohibition is loss of federal funds. *See supra* at 10–11. Any further remedy is discretionary. *Id.* The government had no obligation to secure use of the ramps for Sea Air, and it cannot be held liable in damages for its failure to do so.

*Affirmed. No costs.*

---

13. The St. Croix federal district court ruled that the exclusive lease granted to Sea Air's rival did not violate federal law. *See Sea Air Shuttle Corp. v. Virgin Islands Port Auth.,* 800 F.Supp. 293, 303–05 (D.Vi.1992). Sea Air filed a motion for reconsideration, which was denied, but did not appeal the ruling.