UNITED STATES of America, Plaintiff–Counter–Defendant–Appellee,

and

United States Department of Labor; Federal Mine Safety & Health Administration, Counter–Defendants-Appellees,

v.

AGRONICS INCORPORATED, Defendant–Counter–Claimant–Appellant.

No. 94–2258.

United States Court of Appeals, Tenth Circuit.

Jan. 22, 1999.

John J. Kelly, United States Attorney, John W. Zavitz, Assistant U.S. Attorney, Albuquerque, NM, for Plaintiff–Counter–Defendants–Appellees.

Peter V. Domenici, Jr., Albuquerque, NM, for Defendant–Counter–Claimant–Appellant.

Before BRORBY, McKAY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiff United States of America brought this action to recover a civil penalty imposed by the Federal Mine Safety and Health Administration (MSHA) against defendant Agronics, Incorporated in connection with its operation of a humate mining and processing facility in Sandoval County, New Mexico. Under the applicable statutory scheme, the district court had limited jurisdiction to order payment of this administratively final and conclusive penalty, without collateral review of the merits. *See* 30 U.S.C. §§ 816(a)(1), 820(j). In response, Agronics filed a counterclaim for damages under the Federal Tort Claims Act, alleging MSHA had breached a statutory duty to exercise complete and exclusive regulatory jurisdiction over the Agronics facility, resulting in inconsistent and commercially adverse enforcement action by another agency. The district court dismissed the counterclaim under the "discretionary function" exception of the FTCA, 28 U.S.C. § 2680(a). Following the entry of judgment for the government on recovery of the penalty, Agronics appealed the dismissal of its counterclaim. We affirm for the reasons stated below.[1]

## Discretionary Function

■ Agronics alleged that at various times MSHA improperly ceded authority over parts of the Sandoval County facility to the Occupational Safety and Health Administration (OSHA), whose designee, the New Mexico Environmental Department (NMED),[2] caused direct financial harm through penalty assessments and closure orders, and indirect losses through injury to Agronics' reputation and goodwill. The district court held

MSHA's determination of its own jurisdictional reach, and consequently the scope of OSHA's subordinated authority,[3] was a matter of administrative policy and dismissed Agronics' counterclaim under the discretionary function exception, obviating any need to resolve the merits of the underlying question of administrative jurisdiction. *See generally United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). We review this decision de novo. *See Duke v. Department of Agric.,* 131 F.3d 1407, 1409 (10th Cir.1997).

Agronics contends MSHA's cession of regulatory authority to OSHA does not implicate the discretionary function exception because, whatever discretion an agency like MSHA may have with respect to *how* it regulates activities within its jurisdiction, it does not have discretion to *abdicate* that legislatively invested authority. At places in its brief, the government appears to be broadly insisting that, in light of potentially difficult questions raised by the statutory specification of MSHA's jurisdiction, especially vis-à-vis OSHA's overlapping mission, the determination and assumption of that jurisdiction is perforce discretionary. However, the government cites no authority indicating that a regulatory agency's legislatively designated jurisdiction, whether simple or complicated, is something the agency may freely construe and assume, alter, or decline. Indeed, such a laissez-faire view regarding agency modification of legislatively invested authority could have significant, and thus far unexamined, administrative law implications well beyond the compass of the present FTCA context.[4]

---

1. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

2. NMED exercised OSHA's regulatory authority under a state plan approved pursuant to 29 U.S.C. § 667.

3. MSHA specifically governs mining operations, while OSHA governs employment conditions generally. Where the two overlap, as they do with respect to the occupational conditions of miners, MSHA regulations preempt OSHA au-

thority. *See, e.g., United Energy Servs., Inc. v. Federal Mine Safety & Health Admin.,* 35 F.3d 971, 977 (4th Cir.1994); *Pennsylvania Elec. Co. v. Federal Mine Safety & Health Review Comm'n,* 969 F.2d 1501, 1504 (3d Cir.1992).

4. We note, for example, that under the Administrative Procedures Act (APA), agency action may be held unlawful and set aside if found to be *"in excess of statutory jurisdiction,* authority, or limitations, *or short of statutory right."* 5 U.S.C. § 706(2)(A) (emphasis added). It is not at all evident how this general principle of administrative law can be reconciled with the "discretionary jurisdiction" position advanced by the government herein.

Because we can dispose of this case on another rationale, we need not decide as a general matter whether agencies possess such autonomy in this regard as would invoke the FTCA's discretionary function exception.

The government also argues in support of a much narrower basis for upholding its discretionary function defense, one which the district court explicitly relied on for its disposition of the case. The district court gleaned an express grant of discretionary authority to the Secretary of Labor specifically with respect to MSHA/OSHA jurisdictional questions from the following statutory language:

> "[C]oal or other mine" [5] means ... structures, facilities, equipment, machines, tools, or other property ... used in, or to be used in, or resulting from, the work of extracting ... minerals ... or used in, or to be used in, the milling of such minerals.... In making a determination of what constitutes mineral milling for purposes of this chapter, the Secretary shall give due consideration to *the convenience of administration resulting from the delegation to one Assistant Secretary of all authority* with respect to the health and safety of miners employed at one physical establishment.

30 U.S.C. § 802(h)(1) (emphasis added). The legislative history indicates the "Assistant Secretar[ies]" referred to are the administrators of MSHA and OSHA. *See* H.R. Conf. Rep. No. 95–655, at 38 (1977), *reprinted in* 1977 U.S.S.C.A.N. 3485, 3486 (noting the statute "authorize[s] the Secretary, in cases of possible overlapping jurisdictions *between the Mine Safety and Health Administration and OSHA,* to assign enforcement responsibilities to a single agency" (emphasis added)). And, in fact, MSHA and OSHA have executed an interagency agreement to coordinate their respective jurisdictions pursuant to this statutory authority. *See* 44 Fed.Reg. 22827 (1979), *amended by* 48 Fed.Reg. 7521 (1983).

In the district court's view, this direction to the Secretary to consider such a matter of economic/political policy as administrative convenience betokens a "judgment or choice" which "can be said to be grounded in the policy of the regulatory regime" and which, therefore, falls within the discretionary function exception. *Gaubert,* 499 U.S. at 322, 325, 111 S.Ct. 1267; *see Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. 1954. In a different but still informative context, the District of Columbia Circuit similarly concluded that the same statutory language "gives the Secretary discretion, within reason, to determine what constitutes mineral milling, and thus indicates his determination is to be reviewed with deference both by the [Federal Mine Safety and Health Review] Commission and the courts." *Donovan v. Carolina Stalite Co.,* 734 F.2d 1547, 1552 (D.C.Cir.1984).

A persuasive case can thus be made that, at least as to decisions falling within the pertinent clause of § 802(h)(1), i.e., where milling activities at a mine could give rise to a dual MSHA/OSHA presence, the Secretary of Labor has discretion to override the split regulatory jurisdiction and grant one or the other agency full authority. However, Agronics asserts MSHA *had* exclusive jurisdiction and improperly *relinquished part* to OSHA, an action the statute does not specifically sanction. Again, we need not address this unsettled question regarding agency control over legislatively designated authority, as there is a more basic problem with Agronics' claim, one which bars its use of the FTCA as a vehicle for second-guessing MSHA's jurisdictional determinations regardless of whether these determinations are discretionary or not.

### Statutory Duty/Private Analog

■ "It is virtually axiomatic that the FTCA does not apply 'where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs.'" *Sea Air Shuttle Corp. v. United States,* 112 F.3d 532, 536 (1st Cir.1997) (quoting *Johnson v. Sawyer,* 47 F.3d 716, 727–28 (5th Cir.1995) (en banc)). Other courts invoke the same rule by the shorthand expressions of immune "quasi-legislative" or "quasi-judicial" action. *See, e.g., C.P. Chem. Co. v. United States,* 810

---

**5.** The phrase "coal or other mine" is used to specify the domain of MSHA's regulatory author- ity in 30 U.S.C. § 803.

F.2d 34, 37–38 (2d Cir.1987); *Jayvee Brand, Inc. v. United States,* 721 F.2d 385, 390 (D.C.Cir.1983). The underlying principle is that the FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law, *see* 28 U.S.C. §§ 1346(b), 2674, and federal statutory duties regarding peculiarly administrative acts generally involve "a type of conduct that private persons could not engage in, and hence could not be liable for under local law." *Sea Air Shuttle,* 112 F.3d at 537 (quotation omitted); *see also Dorking Genetics v. United States,* 76 F.3d 1261, 1266 (2d Cir.1996) ("[I]t is hard to imagine how state law could recognize a duty of a private person [in connection with] ... regulation ... which is reserved exclusively to the federal government.").

■ Thus, for example, courts have rejected FTCA claims premised upon such administrative/regulatory acts or omissions as (1) the FAA's failure to take enforcement action against an entity not complying with federal laws and rules, *see Sea Air Shuttle,* 112 F.3d at 536–37; (2) the USDA's failure to prohibit the exportation of disease-exposed cattle, *see Dorking Genetics,* 76 F.3d at 1264–66; and (3) various agencies' noncompliance with proper rulemaking procedures, *see, e.g., Sky Ad, Inc. v. McClure,* 951 F.2d 1146, 1147 & n. 2 (9th Cir.1991); *C.P. Chem. Co.,* 810 F.2d at 37–38; *Jayvee Brand, Inc.,* 721 F.2d at 389–90. The wrongful conduct alleged in the present case—the unauthorized division of regulatory jurisdiction between two administrative agencies—is, if anything, an even clearer example of subject matter beyond the contemplated scope of the FTCA. Indeed, it would be difficult to conceive of a government activity less amenable to analogy to the private sphere than a regulatory agency's determination of its statutory jurisdiction.

This conclusion is only buttressed by our consideration of the state tort "analog" suggested by Agronics for its FTCA claim, i.e., unjustified interference with business opportunity.[6] Given the potential commercial impact of virtually all government regulation, holding the FTCA available to any persons or entities aggrieved in their business by administration action would result in wholesale collateral second-guessing of federal regulatory activity—and under *state tort* law unconstrained by the comprehensive (APA) scheme Congress designed for the task of administrative review. Much of what was said years ago in *Jayvee Brand, Inc.* is equally apt here:

Appellants ask us to make a major innovation in the law by holding that the FTCA provides damage actions as an additional means of policing the internal procedures of government agencies.... Appellants' theory of governmental liability ... would seem to impose liability for any agency's failure to follow procedures prescribed by any regulation or statute, including the Administrative Procedures Act. Congress has provided elaborate mechanisms of judicial review so that rules adopted by improper procedures may be declared nullities. Nowhere, so far as we are aware, has Congress stated that, in addition, the affected parties could collect damages from the government. Surely, so striking a mode of policing procedural regularity as the use of damage actions for millions or hundreds of millions of dollars would have been mentioned.

. . . .

The distinction thus made between types of tort (assuming that we are dealing here with a tort at all) is firmly rooted in obvious policy differences.... It is entirely appropriate that a government employee's alleged tort, such as driving negligently, should be judged according to the standards of care in the community where the act occurred.... It would be most inappropriate, however, that the quasi-legislative procedures of a government agency should be policed according to local law....

Even more unlikely—and more absurd—is the implication of appellants' ar-

---

6. We note that Agronics' reliance on this tort theory raises an additional difficulty, which we need not resolve. Some courts have held that the FTCA's exclusion of claims for "interference with contract rights," 28 U.S.C. § 2680(h), is broad enough to encompass general business-interference claims as well. *See, e.g., Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1155 & n. 5 (D.C.Cir.1985) (citing cases, majority of which deny coverage under FTCA).

gument that Congress intended that agency decisions ... should be held subject to damage liability according to the tort law of whatever state or municipality a federal agency happens to be in when it acts. *Jayvee Brand, Inc.*, 721 F.2d at 391, 392–93. Many courts have noted in this connection "[t]hat the House Report accompanying the bill that became the FTCA included the specific statement that it is neither 'desirable [n]or intended that the constitutionality of legislation, or the legality of a rule or regulation, should be tested through the medium of a damage suit for tort.'" *C.P. Chem. Co.*, 810 F.2d at 37 (quoting H.R.Rep. No. 79–1287, at 6 (1945)).

We conclude that MSHA cannot be held liable under the FTCA for adverse financial repercussions resulting from the determination of its own regulatory jurisdiction. Not only would such liability constitute an impermissible state law encroachment on the proper domain of the federal Administrative Procedures Act, it would place the government in a disadvantageous position compared to private entities or persons who bear no comparable duty. This, of course, exceeds the FTCA's waiver of sovereign immunity, which extends no farther than the limits of private tort liability:

> Where a claim is wholly grounded on a duty imposed by an allegedly violated federal statute or regulation, to allow FTCA recovery ... without requiring that there be some specific basis for concluding that similar conduct by private persons or entities would be actionable under state law, is to in essence discriminate against the United States: recovery against it is allowed, although [a] ... private person or entity would not be subject to liability under state law. Plainly, the FTCA waiver of sovereign immunity does not go so far.

*Johnson*, 47 F.3d at 729.

The judgment of the district court is AFFIRMED.