John M. APPLETON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ.A. No. 98–0344.

United States District Court, District of Columbia.

Jan. 10, 2002.

Robert Gerald Nath, Odin, Feldman & Pittleman, P.C., Fairfax, VA, James Henry Jeffries, III, Greensboro, NC, for plaintiff.

Doris D. Coles–Huff, Jane M. Lyons, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION

KAY, United States Magistrate Judge.

At the close of Plaintiff's case during the trial of this matter, Defendant United States of America ("Defendant" or the "Government") orally moved for a directed verdict and renewed its motion to dismiss Count II of the Complaint.[1] Plaintiff John Appleton ("Plaintiff" or "Appleton") orally opposed the Motion for Judgment, and Defendant's Renewed Motion to Dismiss. The Court took the Motion for Judgment ("Motion") and the Renewed Motion to Dismiss ("Renewed Motion") under advisement and the Government presented its case. Upon consideration of Defendant's Motion and Renewed Motion, and the opposition thereto, and a bench trial having been held on January 4 and 5, 2001, for the reasons set forth below, Defendant's Motion is granted and the Renewed Motion is denied as moot.

### I. Factual Background

Section 38 of the Arms Export Control Act ("AECA") authorizes the President of the United States to control the importation of defense articles and defense services in furtherance of world peace and the security and foreign policy of the United States. 22 U.S.C. § 2778(a)(1). The statute also provides that no designated defense articles may be imported without a license in accordance with AECA and regulations issued thereunder. 22 U.S.C. § 2778(b)(2); see B–West Imports, Inc. v. United States, 75 F.3d 633 (Fed.Cir.1996). Authority under Section 38 has, in turn, been delegated to the Secretaries of State, Treasury, and Defense. Exec. Order No. 11958, 3 C.F.R. § 79 (1977), reprinted in 22 U.S.C. § 2751. The delegation grants the Secretary of the Treasury primary responsibility for issuing and administering permanent import controls of defense articles and services and further, the Secretary of Treasury has delegated implementation authority to the Bureau of Alcohol, Tobacco, and Firearms ("BATF"). Executive Order No. 11432 (October 22, 1968); 1968–2 C.B. 906; Treasury Department Order No. 120–01 (formerly No. 221), 37 Fed.Reg. 11696 (1972).

From at least March 27, 1987, through mid–1994, all imports from "a[ny] parasta-

---

1. "If a motion is denominated a motion for directed verdict ... [such] a motion should be treated as a motion for judgment as a matter of law in accordance with this rule [Fed. R.Civ.P. 50(a)]." See 1991 Amendment to Fed.R.Civ.P. 50. This Court will thus treat Defendant's motion for a directed verdict as a motion for judgment as a matter of law.

tal organization of South Africa" were barred. *See* 52 Fed.Reg. 9982 (Mar. 27, 1987). The State Department published a list of such organizations, but warned that the list was "not all-inclusive" and advised importers that "[b]efore making a commitment to import from South Africa, importers may wish to seek guidance from the Office of Southern African Affairs ... to ascertain whether a corporation, partnership, or entity has been identified as a parastatal organization." *Id.*

By mid–1994, imports from South Africa had become generally permissible, yet, the products of certain companies remained banned. On June 30, 1994, and extending through the time when Plaintiff applied for ammunition import permits, the United States Government imposed a specific ban on all export licenses for products to and imports from Armscor (an arms manufacturing company) and its associated entities because of a 1991 indictment of Armscor. *See* 59 Fed.Reg. 33811 (June 30, 1994).

Under BATF regulations, persons seeking to import defense articles, including ammunition, into the United States must obtain a permit from the agency. *See* 27 C.F.R. § 47.41(a). BATF requires prospective importers of ammunition to apply for a permit by completing and filing an ATF Form 6, Part I. 27 C.F.R. § 47.42(a). Item 8(a) on the Form 6 requires applicants to provide the name and address of the manufacturer of the ammunition they wish to import.

Plaintiff Appleton was a licensed arms dealer under the AECA. In the fall of 1994, he submitted five applications for import permits expressly designating "State Arsenal Republic of South Africa" as the manufacturer of the ammunition he sought to import. Between October 1994 and January 1995, BATF approved all five permits. Following approval of the first permit, Plaintiff contracted to purchase a quantity of ammunition from an arms dealer in Great Britain and to re-sell the ammunition to a buyer in the United States. After some of the ammunition arrived in the United States in February 1995, BATF learned that it had been manufactured by Pretoria Metal Pressings Ltd. ("PMP"), a company affiliated with Armscor and on a list of proscribed companies whose products were barred from importation into the United States. BATF thereupon revoked all five of Plaintiff's permits because the importation of goods made by PMP violated United States policy.[2] Plaintiff was thus unable to complete his proposed business transactions. He subsequently brought this claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) and 2671–2680 ("FTCA").

## II. Procedural Background

Plaintiff's Complaint initially consisted of three counts. The Court granted Defendant's motion to dismiss Counts I and III of Plaintiff's Complaint.[3] The Court

---

**2.** The Department of State later rescinded the revocation of *one* of the permits, noting that Plaintiff was a "small businessman who had not previously applied for any other import licenses for goods originating in South Africa" and he "made a credible argument that he did not know of the State Department's denial policy against Armscor as it applies to imports." The Department of State thus concurred with BATF's recommendation that Mr. Appleton be provided some relief. *See* Plain-

tiff's Exhibit 29, which is a letter from the Department of State to BATF.

**3.** Count I challenged the Government's debarment powers and alleged that the Government interfered with Plaintiff's contract with a third party. United States District Judge Urbina held that this claim was barred by the discretionary function exception. Count III alleged that the BATF should be liable for revocation of the permits. Judge Urbina dismissed this claim, citing *B–West Imports v.*

has addressed Count II of the Complaint, alleging BATF's negligent approval of the permit applications, on three separate occasions. On August 31, 1999, the Court rejected Defendant's assertion of the discretionary function exception on the grounds that a genuine issue remained as to "whether or not BATF exercised a policy-based discretion in approving Mr. Appleton's applications and whether or not BATF acted negligently in approving those applications." *Appleton,* 69 F.Supp.2d at 98.

In early 2000, Defendant again argued that Plaintiff's remaining claim was barred by the discretionary function exception, but also added a defense based on Plaintiff's contributory negligence and his inability to prove the elements of negligence. On May 18, 2000, the Court, in denying cross-motions for summary judgment, found that genuine issues remain as to whether the BATF examiner made a policy-based discretionary decision not to investigate Plaintiff's designation of an ammunition manufacturer [on the BATF import permit applications] and "whether [B]ATF and/or Mr. Appleton acted negligently in the approval of his applications." *Appleton v. United States,* 98 F.Supp.2d 30, 42–43 (D.D.C.2000).

In November, 2000, Defendant filed a Renewed Motion to Dismiss Count II, asserting that this Court has no jurisdiction pursuant to a misrepresentation exception to the Government's waiver of sovereign immunity, 28 U.S.C. § 2680(h). This Court denied Defendant's Renewed Motion to Dismiss Count II in a Memorandum Opinion and Order dated January 3, 2001, and the case proceeded to trial, by consent, before the undersigned on January 4

and 5, 2001. Plaintiff's sole remaining cause of action at trial was based upon the Government's purported negligent approval of Mr. Appleton's permit applications and its failure to request that Plaintiff provide additional information regarding the manufacturer of the ammunition.

At the trial held on January 4 and 5, 2001, counsel for both parties agreed to the following stipulations: 1) Plaintiff was a licensed arms dealer; 2) the term "State Arsenal, Republic of South Africa" does not appear on any BATF list of proscribed entities; 3) the name PMP does appear on the list of prohibited companies; and 4) the ammunition, which is the subject of this lawsuit, was manufactured in South Africa by PMP.

### III. Legal Standards

#### A. Motion for Judgment

 Fed.R.Civ.P. 50(a) provides in pertinent part that:

[If] there is no legally sufficient evidentiary basis for a reasonable [fact finder] to find for [a] party on [an] issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim ... that cannot under the controlling law be maintained ... without a favorable finding on that issue.

"Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable [fact finder] to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105

---

*United States,* 75 F.3d 633, 636 (Fed.Cir.1996) (wherein the court dismissed a suit challenging the revocation of a munitions import permit, reasoning that the power to issue permits

includes the power to revoke them.) *Appleton v. United States,* 69 F.Supp.2d 83 (D.D.C. 1999).

(2000). "The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56. Thus, the court must review all of the evidence in the record ..." *Id.* (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538; *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555, 110 S.Ct. 1331, 108 L.Ed.2d 504; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202.) *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.)

### B. Negligence

■■■ Under District of Columbia law, which applies under the FTCA, the plaintiff in a negligence action bears the burden of proof, by a preponderance of the evidence, to demonstrate the applicable standard of care, deviation from that standard, and the causal relationship between the deviation and plaintiff's injury. *See Messina v. District of Columbia*, 663 A.2d 535, 537–538 (D.C.1995), citing *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988) (quotation omitted); *see also Clark v. District of Columbia*, 708 A.2d 632, 634 (D.C. 1998) (citations omitted); *District of Columbia v. Price*, 759 A.2d 181, 183 (D.C. 2000) (citation omitted). To allege negligence, a complaint cannot merely make conclusory assertions but must specify a negligent act and characterize the duty whose breach might have resulted in negligence. *District of Columbia v. White*, 442 A.2d 159, 162 (D.C.1982) (citing *Kelton v. District of Columbia*, 413 A.2d 919, 922 (1980)). Judgment as a matter of law for the defendant is warranted if the plaintiff has failed to present evidence on any element of his case sufficient to permit a reasonable [fact-finder] to find in his favor. *Price*, 759 A.2d at 183 (citing *Grant v. District of Columbia*, 597 A.2d 366, 370 (D.C.1991)).

### IV. Analysis

#### A. Issues before the Court

Previously, the Court summarized the remaining issues for trial as: 1) whether or not BATF exercised policy-based discretion in approving Mr. Appleton's import applications; 2) whether or not BATF acted negligently when it approved Plaintiff's applications to import ammunition allegedly manufactured by the "State Arsenal, Republic of South Africa;" and 3) whether or not Mr. Appleton acted negligently when he certified that the information provided on his applications was "true and complete" without taking additional steps to discover the true identity of the manufacturer of the ammunition. *Appleton v. United States*, 69 F.Supp.2d 83, 93–94, 97–98 (D.D.C.1999); *Appleton v. United States*, 98 F.Supp.2d 30 (D.D.C.2000).

#### B. Plaintiff's Case–in–Chief

Plaintiff's case-in-chief consisted of testimony by John Appleton; deposition testimony of Plaintiff's supplier, Mr. Tony Slatter; and Plaintiff's exhibits (hereinafter referenced as "Exhibit"). Mr. Appleton testified that Mr. Slatter, a United Kingdom based importer and exporter of firearms, ammunition and surplus military goods, contacted Plaintiff on or about September 15, 1994, offering to sell 23 to 30 million rounds of ammunition. Mr. Slatter indicated that the ammunition was from South Africa. Plaintiff, generally aware of restrictions imposed on imports from South Africa, telephoned Ms. Ginger Alford, a BATF employee and liaison officer between BATF and the State Department,

to determine if the ammunition was importable. He testified that when he inquired whether ammunition from South Africa was importable, Ms. Alford stated "yes and no", indicating that it depended on the company that manufactured the ammunition. *See* Transcript Vol. I, p. 42, lines 3–25; p. 43, lines 1–3, 9–25; p. 44, lines 1–2 (January 4, 2001). Ms. Alford was however unable to provide Plaintiff with a list of the companies whose products were not importable. *See* Transcript Vol. I, p. 44, lines 3–7 (January 4, 2001). Plaintiff also testified that no such list was publicly available until after his permits were revoked, when a list was, according to Mr. Appleton, published in a Federal Firearms Licensee Newsletter. *See* Exhibit 5, Federal Firearms Newsletter.[4] Plaintiff was told he could submit his import applications and ascertain whether the ammunition could be imported.

Mr. Appleton testified that prior to completing the Form 6 ATF applications [Exhibits 7–11], he asked Mr. Slatter to provide the name of the manufacturer of the ammunition. *See* Transcript Vol. I, p. 50, lines 16–23 (January 4, 2001). Mr. Slatter told Plaintiff that he was unable to identify a manufacturer from the headstamp on the

ammunition [an identifying mark stamped on the end of each cartridge] and he also refused to reveal his supplier's name, claiming that it was "proprietary information." *See* Transcript Vol. I, p. 50, lines 24–25; p. 51, lines 1–4; p. 53, lines 21–25; p. 54, line 1 (January 4, 2001). Mr. Slatter confirmed that he never told Plaintiff where he purchased the ammunition, and "for all [Appleton] knew when he agreed to buy the stuff, [he] could have been getting it from Outer Mongolia. . . . [a]ll [Plaintiff] knew, which he openly told BATF is that it was originally made in South Africa."[5] *See* Slatter Dep. at p. 13, lines 3–8; *see also* Slatter Dep. Exhibit 5, which is a facsimile to John Appleton with an attached facsimile from Mr. Slatter to Mr. Brian D. Murphy [Mr. Slatter's United States counsel].

Mr. Slatter told Mr. Appleton to use the term "State Arsenal, Republic of South Africa" as the manufacturer of the ammunition. *See* Slatter Dep. at p. 27, lines 19–23; p. 28, lines 2–9.[6] Plaintiff testified that he did not inquire further of BATF whether State Arsenal of the Republic of South Africa was a debarred entity nor did he submit any additional information to BATF such as the headstamp markings or

---

4. Plaintiff's counsel argued that all South African arms manufacturers were barred from selling ammunition to United States buyers; however, Plaintiff presented no evidence to support that statement. Instead, the evidence presented shows that Ms. Alford told Mr. Appleton that some South African manufacturers were on a prohibited list while others were not. Further, Exhibit 4 lists specific entities that are affiliated with Armscor and whose products were non-importable. There is no evidence of record that the list encompassed *all* munitions manufactured in the Republic of South Africa. In fact, the statement of Ms. Alford to Plaintiff suggests the contrary.

5. Mr. Slatter's supplier was Armscor, the principal entity on the list of debarred companies.

6. Mr. Slatter testified that he could not recall the first time he discussed with Mr. Appleton the manufacturer of the ammunition but he instructed Mr. Appleton "towards the end of '94" to use the phrase "State Arsenal Republic of South Africa" regarding the Form 6 application's request for the manufacturer of the ammunition. *See* Slatter Dep. at p. 27, lines 19–23; p. 28, lines 1–17. Mr. Slatter had previously inspected a sampling of ammunition at the South African National Defense Force ("SANDF") depot, in their stores, and had a conversation with a SANDF colonel, who told Mr. Slatter that "we [South Africa] have our own arsenals." *See* Slatter Dep. at p. 28, lines 21–23; p. 29, lines 1–23; p. 30, lines 1–9.

a photograph of the marking on the casings of the ammunition. *See* Transcript Vol. IA, p. 32, lines 24–25; p. 33, lines 1–8; p. 25, lines 3–25; p. 26, lines 1–12 (January 4, 2001). Plaintiff testified that in February 1995, after the five permits had been issued, he learned that BATF was conducting an investigation into who manufactured the ammunition to be purchased. *See* Transcript Vol. I, p. 70, lines 12–25; p. 71, lines 1–25; p. 72, lines 1–15 (January 4, 2001). The reason for the investigation was BATF had learned that the manufacturer may have been Pretoria Metal Pressings ("PMP"), a debarred company. *Id.* Plaintiff contacted his supplier, Mr. Slatter, urging him to again pursue the identity of the manufacturer. On March 6, 1995, Plaintiff received notice from BATF that his permits had been revoked because the manufacturer was PMP, a subsidiary or affiliate of Armscor. *See* Plaintiff's Exhibit 18, which is a letter from BATF to Plaintiff, dated March 6, 1995.

Following Plaintiff's request for the name of the manufacturer, Mr. Slatter contacted Armscor, and was advised that the manufacturer of the ammunition was in fact Pretoria Metal Pressings. Mr. Slatter testified during deposition that he became aware that the ammunition was manufactured by Pretoria Metal Pressings by no later than March 29, 1995, when he received a facsimile from Armscor certifying the manufacturer of the ammunition, and it is possible he was aware of the manufacturer [PMP] prior to March 29, 1995. *See* Slatter Dep. at p. 25, lines 18–29 and p. 26, lines 1–13; *see also* Slatter Dep. Exhibit 11, which is a copy of the March 29, 1995 facsimile he received from Armscor.

### C. *Negligence by BATF in issuing an Import Permit is not Actionable under the FTCA*

■ Plaintiff predicates his only surviving claim for relief on the theory that BATF's failure, prior to issuing the five permits, "to determine that some state arsenals of South Africa were ineligible for ammunition import permits approval" constituted actionable negligence under the FTCA. *See* Complaint Count Two ¶ 23. Essentially Plaintiff is alleging that the Government was negligent in its review and approval of his five applications.

To prevail on a theory of negligence under the FTCA, Plaintiff must initially meet two preconditions. First, he must show that BATF owed him a duty which if breached entitled him to a claim for damages and that he sustained damage as a result of such breach of duty. 28 U.S.C. § 1346(b) authorizes suits against the United States for damages:

> for injury or loss of property . . . caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

■ In other words, the circumstances giving rise to Plaintiff's claim of negligence must be analogous to events or circumstances which, if the Defendant were a private entity would give rise to a tort claim and liability under District of Columbia statutory or decisional law. If the alleged conduct would not impose liability in the private sector under local law, then the court lacks jurisdiction under the FTCA. The act does not create a new or novel cause of action; it waives sovereign immunity for acts of government officers which, if they were private non-government employees, would be recognized under state law as tortious. Even if a feder-

al statute or regulation requires a federal employee to perform a certain act or creates a duty, liability to those who benefit from the act or duty cannot be based on the FTCA if there is no private liability under state law. *Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir.1977). *cert. den.,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). Thus the alleged tort must have a private analogue. *See* Harper, James and Gray, The Law of Torts § 29.13, at 708 (2d ed.1986). If Plaintiff meets the first condition, he must prove that the breach of duty resulted in damage.

■ The Court finds that Plaintiff's Count II alleging negligence must fail because his claim relies exclusively on the alleged negligence of BATF in reviewing and approving his import permits applications which if true would not be negligent acts under District of Columbia law. The right to control the importation of and export of commodities to and from the United States, under the Constitution, vests exclusively with the Federal Government.[7] In this case, the Department of State determined that the importation of munitions from certain South African companies was inimical to the best interests of the United States and should be banned.

■ The authority to restrict imports from a particular country or foreign manufacturer implicates no due process rights of an individual putative importer. As noted above, absent a clear intent by the United States to assume an obligation which has no counterpart in local law, it has not waived its sovereign immunity. *See Akutowicz v. United States,* 859 F.2d 1122 (2d Cir.1988), where the Court held that the wrongful revocation of citizenship

is not actionable under the FTCA. *See also Westbay Steel v. United States,* 970 F.2d 648 (9th Cir.1992) (the failure of a contracting officer to use reasonable care in approving sureties provided under the Miller Act is not actionable under the FTCA even if the subcontractor relied on the contracting officer's approval of surety); *Gelley v. Astra Pharmaceutical Products, Inc.,* 466 F.Supp. 182 (D.Minn.1979), *aff'd.* 610 F.2d 558 (8th Cir.1979) (in a case involving federal approval of a drug, the Government could not be held liable for the negligence of its employees because the applicable District of Columbia law did not impose a tort duty on private persons to perform acts required by the Food and Drug Administration regulatory scheme.)

■ Reviewing applications for the purpose of determining whether the applicant is authorized to import ammunition is exclusively a governmental function governed by federal regulations administered by BATF without any private counterpart. If there is no local law that imposes liability for negligent review of applications to import goods into the United States, then the government cannot be held legally responsible for the acts of its 'negligent' employees. *Id.,* 466 F.Supp. at 185. *See also Delta Savings Bank v. United States,* 265 F.3d 1017, 1026 (9th Cir.2001) ("To bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged here [under the civil rights statutes]"); *Williams v. United States,* 242 F.3d 169

---

**7.** Congress possesses total and complete control over foreign commerce. *Weber v. Freed,* 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308 (1915). The Constitution gives no reserved or implied power to the States over international commerce. *Champion v. Ames,* 188 U.S. 321, 347, 23 S.Ct. 321, 47 L.Ed. 492 (1903).

(4th Cir.2001)(barring a FTCA claim based on the Emergency Medical Treatment and Active Labor Act because North Carolina law does not create a duty on the part of an Indian hospital to provide emergency medical treatment or a duty not to discriminate in refusing to provide treatment.) *See also Jayvee Brand, Inc. v. United States,* 721 F.2d 385, 390 (D.C.Cir. 1983) (concluding that "quasi-legislative or quasi-adjudicative action by an agency of the federal government [banning a flame-retardant compound used in children's clothing] is action of the type that private persons could not engage in and hence could not be liable for under local law"); *Sea Air Shuttle Corporation v. United States,* 112 F.3d 532 (1st Cir.1997) (holding that claimed failure of Secretary of Transportation and Federal Aviation Administration to take enforcement action was not conduct for which private individual could be held liable, and thus did not give rise to a FTCA action); *C.P. Chemical Company, Inc. v. United States,* 810 F.2d 34 (2d Cir.1987) (United States was not liable under a FTCA claim where no private individual could be held liable for the same action [banning a particular type of insulation], which was based on the provisions of the Consumer Product Safety Act.) Thus the Court finds that even if BATF carelessly or negligently reviewed and approved Plaintiff's five applications, such reviews and approvals would not be actionable negligence under the FTCA.

Plaintiff's argument that the BATF was negligent because its own procedures require the Government to request information affords him little support. ATF Form 6, under a paragraph titled "Approval", states that "[i]n some cases it may be necessary to request additional information or to have an examination to determine the import status." *See* Exhibit 6. This provision authorizes BATF, if necessary, to request additional information.

However plaintiff presented no evidence that any of his five applications on their face should have caused BATF to question the accuracy of his representations. At the close of Plaintiff's argument opposing Defendant's Motion, he vigorously suggested that "State Arsenal of the Republic of South Africa", while not precise, was accurate, but "it screamed for clarification" and required additional information such as a picture of the headstamp. *See* Tr. Vol. IA, p. 70 (Jan. 4, 2001). Plaintiff cannot point to any record evidence that identifying the manufacturer of ammunition as "State Arsenal Republic of South Africa" should have caused the BATF reviewing officer to solicit additional information. His testimony noted that neither he nor his seller, Mr. Slatter, knew who manufactured the ammunition. Plaintiff finds himself in the anomalous position of arguing that BATF was negligent because it relied on the identity of the manufacturer of the ammunition provided by him, which was at best imprecise, but according to his attorney, accurate, whereas the facts and testimony now reflect that the information provided by Plaintiff was not accurate.

The parties stipulated at trial that State Arsenal Republic of South Africa was not an entity on the State Department debarred list. Moreover, Plaintiff's own testimony belies his argument that the name of the manufacturer of the ammunition he provided to BATF should have caused the reviewing official to be suspicious. He testified at trial that 'arsenal' is frequently used by munitions importers to identify a manufacturer on ATF Form 6 applications. *See* Tr. Vol. IA, p. 4, lines 20–25; p. 26, lines 13–18 (January 4, 2001).

Plaintiff knew that the name of the manufacturer was significant and knew that approval of his applications to import the ammunition would hinge on who manufac-

tured it. He had been told during his conversation with Ms. Alford that ammunition made by certain companies could not be imported. He also knew that State Arsenal Republic of South Africa may not have been accurate. His seller, Mr. Slatter, told him that the headstamp did not identify the manufacturer but Plaintiff should tell BATF that a state arsenal made the ammunition. If Mr. Slatter, independent of any marking of the headstamp on the ammunition, knew that the manufacturer was in fact a state arsenal of South Africa, the headstamp was not a factor in ascertaining who made the ammunition and there would be no reason for Mr. Slatter to tell Plaintiff that the headstamp did not identify the manufacturer. When viewed against the backdrop of what Plaintiff knew or did not know about the manufacturer, coupled with the information he certified as true to the best of his knowledge and information on the ATF Form 6, Plaintiff's contention that BATF was negligent in its review of his applications borders on the disingenuous. The Court is also constrained to note that Mr. Slatter testified that in September 1994, he told Plaintiff to identify the manufacturer as a state arsenal and also testified that in March 1995, at the request of Plaintiff for more information about who manufactured the ammunition, he immediately contacted his supplier, Armscor, and was told that the ammunition was made by Pretoria Metal Pressings. Neither Plaintiff or Mr. Slatter presented any reason why Mr. Slatter could not have obtained the name of the manufacturer in September 1994, prior to the contract of sale and prior to filing the ATF Form 6 applications; nor did Plaintiff testify that executing a contract of sale and filing for import permits was time sensitive.[8]

The Court finds from the evidence presented by Plaintiff at trial that BATF was not negligent in its review and approval of his five applications. The Court also finds that even if BATF carelessly or even negligently reviewed and approved his applications, such review and approval would not be actionable negligence under the FTCA.

## CONCLUSION

This Court finds from the evidence submitted by the Plaintiff during his case in chief:

1) That approval and issuance of permits to import ammunition from South Africa was a governmental function that had no analogue in the private sector and that even if the governmental officials were in fact negligent in issuing such permits to Plaintiff, their negligence would not constitute actionable negligence under the law of the District of Columbia, thereby precluding him from bringing a claim for negligence under the FTCA.

2) Plaintiff did not prove by way of testimony, statute, regulation, or directive that BATF was required to conduct an investigation or inquire further into who manufactured the ammunition he sought to import.

3) That even assuming BATF owed Plaintiff a duty to exercise reasonable care in reviewing, approving and granting the five permits, he did not present any credible evidence that would permit the Court as the finder of fact to conclude that BATF, in approving Plaintiff's five applications, was negligent.

Having found that BATF was not negligent in approving Plaintiff's applications, the Court does not reach Defendant's de-

8. Mr. Slatter refused to tell Plaintiff in September 1994, that his supplier was Armscor, the exclusive selling agent of surplus military goods in South Africa and the principal company on the State Department's list of debarred companies.

fense that the Plaintiff was contributorily negligent.

Accordingly for the reasons set forth herein, the Court finds that Defendant's Motion for Judgment should be granted.

### ORDER

Upon consideration of the Defendant United States of America's oral Motion for Judgment ("Motion") and the United States of America's oral Renewed Motion to Dismiss ("Renewed Motion") and the entire record herein, and for the reasons set forth in the accompanying Memorandum Opinion, it is this 9th day of January, 2002,

**ORDERED** that the Defendant's Motion for Judgment be and hereby is **GRANTED,** and Plaintiff's Complaint is dismissed with prejudice, and it is further

**ORDERED** that the Defendant's Renewed Motion is **DENIED** as moot.

### ORDER

Upon consideration of the Plaintiff's Motion to Supplement the Record, to Compel Production of Documents, and for Sanctions ("Motion") [53], Defendant's opposition thereto [54], Plaintiff's reply [55]; and Plaintiff's Second Motion to Supplement the Record, to Compel the Production of Documents, and for Sanctions ("Second Motion") [56], Defendant's opposition thereto [57], and Plaintiff's reply [58], it is accordingly this 9th day of January, 2002,

**ORDERED** that Plaintiff's Motion and Second Motion be and hereby are **Denied.**